401 A.2d 805

**COMMONWEALTH of Pennsylvania**

v.

**Frank John ZAPPACOSTA a/k/a Frank J. Seib, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 14, 1977.

Decided April 12, 1979.

Petition for Allowance of Appeal Granted August 6, 1979.

Edward F. Browne, Jr., Assistant Public Defender, Lancaster, for appellant.

John A. Kenneff, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was found guilty after jury trial of conspiracy,[1] possession of instruments of crime,[2] and burglary.[3]

1. 18 Pa.C.S. § 903.
2. 18 Pa.C.S. § 907.
3. 18 Pa.C.S. § 3502.

The facts giving rise to appellant's arrest and prosecution in Lancaster County present us with one novel question of law, surely one of first impression, but unfortunately, appellant has waived his right to make this argument before us. This question deals with the authority of federal officers to make an arrest for a state crime.

On June 10, 1976, during daylight hours, 13 FBI agents from the FBI office in Philadelphia, acting under the direction of Supervising Agent Richard Schivein and as a part of a task force investigating a large scale interstate burglary ring, followed appellant and three other persons [4] from the Philadelphia area to Lancaster. The details of this endeavor are lengthy and serve no purpose in the resolution of the appeal, except to note that appellant and his companions traveled by way of the Pennsylvania Turnpike in two automobiles, clearly identified in the record as a certain Chevrolet and a certain Pontiac. On reaching a suburban area of Lancaster, the two individuals in the Pontiac transferred to the Chevrolet and proceeded to Spring Valley Road. Because Spring Valley Road was sparsely populated and there was little vehicular traffic, the FBI surveillance of the Chevrolet was backed off at this point to avoid detection, but agents kept a constant surveillance on the then-parked Pontiac. The surveillance of the Chevrolet was backed off at approximately 1:45 p. m.

At approximately 1:50 p. m., a resident of Spring Valley Road returned to her home and saw a Chevrolet [5] back from her driveway and drive away. She could not identify the occupants, but she observed the trunk of the Chevrolet open and a large square object covered by a blanket inside the

4. Originally co-defendants, but prior to trial a severance was granted as to appellant.

5. The FBI agents variously described it as yellow or gold. This witness described the car she saw as yellow.

trunk. On entering her home, she discovered it had been burglarized and that a large safe and all of her valuable jewelry were missing. She reported the burglary by telephone to local police between 1:55 p. m. and 2:00 p. m. The FBI agents, monitoring local police calls on their car radios, heard the report of the burglary on Spring Valley Road. At 2:02 p. m.[6] the agents watching the Pontiac observed the Chevrolet return to the parking area. These agents saw the trunk of the Chevrolet opened, and a blanket partially covering a large safe inside the trunk. They then observed the four men transfer a black bag to the Pontiac. Two of the men reentered the Chevrolet, while the other two entered the Pontiac, and both cars drove off, under surveillance by the agents.

At a point just prior to reentry onto the Pennsylvania Turnpike, Supervising Agent Schivein gave his agents orders to stop both cars and make arrests. This was done, and local and state police were notified. The stopping and arrest occurred at 2:15 p. m.

The arrests were without warrants and made by the agents. The record is unclear as to timing, but sometime around 1:00 p. m., the Pennsylvania State Police had been alerted as to the agents' activities in the Lancaster area, and at approximately 2:28 p. m.,[7] state police who had been cruising in the area took custody over the prisoners and the two automobiles. The state police were informed at that time by Supervising Agent Schivein that the prisoners were facing federal charges.

· The state police secured search warrants for the cars. The bag in the Pontiac contained numerous tools clearly of special use in burglaries. Included among those items found were a lock pick, a barrel pick, a key ring with 29 keys, a pry

---

**6.** Subsequent road tests established a run time of approximately 8 minutes from the residence on Spring Valley Road to the parking area.

**7.** Interestingly, Corporal Harish, in command of the detail, says he arrived at the scene of the arrest two minutes prior to the arrest. This is the only record indication of Pennsylvania police on the scene at the time of arrest.

bar, a chisel, a sledge hammer, knives, and a machete. The safe in the trunk of the Chevrolet was identified by the victims as the safe taken from their residence on Spring Valley Road. The victims also identified a gold evening purse found in the Chevrolet trunk. The jewelry, all recovered, was found inside the Chevrolet. The Pennsylvania State Police initiated this prosecution.

Trial counsel for appellant filed boiler-plate post-trial motions, later supplemented, which were denied, and judgment of sentence was imposed.

A pre-trial application was made for suppression of evidence. It is set forth as follows:

1. Applicant stands charged with burglary, theft, conspiracy, and possessing instruments of crime.

2. Applicant was arrested in June, 1976, by police officers acting without a warrant.

3. At the time of arrest, applicant and another were traveling lawfully in a private automobile on a public highway in Lancaster County. The arresting officers had no probable cause to arrest applicant or his companion.

4. At or after the arrest, the automobile in which applicant had been travelling was searched by the arresting officers, and certain personal property was seized therefrom. Applicant believes the Commonwealth intends to offer said property in evidence at the trial of these cases.

5. Said property was obtained in violation of the rights guaranteed your Applicant by the Fourth and Fourteenth Amendments to the Constitution of the United States, Article One, Section 8 of the Constitution of Pennsylvania, the Pennsylvania Rules of Criminal Procedure, and the decisions of the several courts of the United States and the Commonwealth of Pennsylvania.

After hearing, suppression was denied.

The supplemental post-trial motions are as follows:

1. The court erred in dismissing defendant's Application For Suppression of Evidence.

2. The court erred in permitting the use at trial of evidence seized as a result of an illegal arrest without a warrant and without probable cause.

3. The court erred in permitting the use at trial of evidence seized from one 1974 Pontiac Grand Prix automobile seized pursuant to a warrant issued without probable cause.

On this appeal appellant poses this question:

"Where agents of the Federal Bureau of Investigation arrest a citizen for the crime of Burglary, have they not acted outside the scope of their legal authority as defined by Federal Law and is not the arrest, therefore, illegal?" (appellant's brief at 1).

We do not find this question raised in the suppression motion. Further, the record of the suppression hearing itself clearly reveals that it was not presented in any manner. We are further of the opinion that the issue has not been properly presented in the post-trial motions. It is, therefore, waived. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

Our review of the facts, as set forth above in greatly condensed form, clearly reveals that appellant's questions concerning probable cause for a warrantless arrest, probable cause for the search warrants, and sufficiency of the evidence are so lacking in merit, that further discussion would border on the ridiculous. On the record before us, they are properly characterized as frivolous.

Appellant's remaining contention, that 18 Pa.C.S. § 906 bars his conviction for both conspiracy and possessing instruments of crime since they arose out of the same criminal episode, is likewise without merit. It is clear that the burglary had been completed. Section 906 is designed to eliminate the conviction for more than one offense in the preparation to commit the objective. Model Penal Code § 1.07 (Proposed Official Draft, 1962). In *Commonwealth v. Crocker,* 256 Pa.Super. 63, 389 A.2d 601 (1978), the majority

of this court held that convictions of attempted theft and possessing instruments of crime were barred by § 906 because, under the facts there presented, they were designed to culminate in the commission of only one crime. It was there observed that the harm presented resided not in the acts already accomplished, but in the danger that the endeavor would succeed. In *Crocker,* the endeavor did not succeed since the defendant was apprehended before the theft of the cable. We are here presented with the culmination of the burglary. Appellant's possession of instruments of crime was after the culmination or completion of the burglary. Therefore the two crimes are not barred in this case since they were not for conduct designed to commit or culminate in the commission of the same crime.

■ Further, it seems clear that § 906 was intended to apply only to conspiracy, solicitation and attempt. The Crimes Code is undoubtedly based upon the Model Penal Code. As such, we observe in the accompanying commentary to the Model Penal Code section explaining the reason for the adoption of this section:

"The provision reflects the policy, frequently stated in these comments, of finding the evil of preparatory action in the danger that it may culminate in the substantive offense that is its object. Thus concerned, there is no warrant for culminating convictions of attempt, solicitation and conspiracy to commit the same offense." Tent. Draft No. 10 at 180 (1962); see also *S. Toll, Pa. Crimes Code Annot.* at 270 (1974); *78 Dick.L.Rev. 159,* 174 (1973).

Judgment of sentence affirmed.

SPAETH, J., files a dissenting statement.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I do not find this case distinguishable from *Commonwealth v. Crocker,* 256 Pa.Super. 63, 389 A.2d 601 (1978), as

does the majority. I should therefore vacate the sentences imposed and remand for resentencing in accordance with *Crocker, supra. And see Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972).