416 A.2d 560

**COMMONWEALTH of Pennsylvania**

v.

**Hector M. CARTAGENA, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 1979.

Filed Dec. 7, 1979.

Herbert R. Weiman, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.[*]

PER CURIAM:

Appellant was convicted after a trial before a judge, sitting without a jury, of murder of the third degree. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of three and one-half to twelve years. This appeal followed.

Appellant challenges the sufficiency of the evidence on two grounds. First, appellant contends that the evidence of medical causation was insufficient to establish beyond a reasonable doubt that appellant's acts caused the victim's death. Second, appellant contends that the evidence was insufficient to establish beyond a reasonable doubt that appellant acts with malice. We have viewed the evidence in a light most favorable to the prosecution and have accepted as true all the evidence from which, if believed, the fact finder could have based its finding of guilt. *Commonwealth v. Roberson*, 485 Pa. 586, 403 A.2d 544 (1979). We conclude that the prosecution met its burden of proving appellant's guilt beyond a reasonable doubt.

■ Appellant was convicted of stabbing the victim after an argument which involved appellant, the victim, and the victim's wife. The victim died approximately one and one-half years after the stabbing incident. Appellant admits

[*] Justice LOUIS L. MANDERINO of the Supreme Court of Pennsylvania, and Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

stabbing the victim. However, appellant contends that the evidence produced at trial did not establish the necessary causation beyond a reasonable doubt. We must reject that contention.

The testimony as to causation of Dr. Aronson, a medical witness for the prosecution, was summarized by the trial judge as follows:

"As to internal injuries, Dr. Aronson found there had been an operation on the spine of the type to alleviate the effects of an injury to the spinal cord. In the area of the spinal cord, he also found puckering or scarings [sic] of the ligaments characteristic of injury and he found that the nerves within the spinal column had atrophied.

Dr. Aronson found decubitus ulcers, or bed sores, which involved the thorax, or chest, and the pelvis, or hips. There was also a point in the right side of the chest in the back where the bed sores had been deep enough to obliterate the muscles between the ribs. This area was contiguous with an area of infection between the lung and the chest wall. Dr. Aronson said he also noted other areas of change which dealt with infections secondary to the paralysis which occurred in the patient.

Dr. Aronson continued his explanation of the secondary infections as follows:

'These other changes of infection included the presence of the pus surrounding the right lung, the presence of pneumonia in the right lung, and into the genito-urinary system, infection in the bladder, the ureters, that is, U–R–E–T–E–R–S—which are the tubes which lead from the bladder to the kidneys—excuse me,—which really lead from the kidneys to the bladder, because that is the direction in which the urine flows, and in the kidneys themselves. This infection or inflammation is indicative of difficulty in passing urine and is an expected complication for paralysis.

In the head there was a mixture of semi-liquified brain tissue and preserved brain tissue and pus. This indicates the fact that there was some infection in the space between the brain and the skull prior to death.'

Dr. Aronson said that death was due to infection due to paralysis due to spinal cord injury due to stab wound of the neck and thorax.

. . . . .

Dr. Aronson said that the immediate effect of the stab wound involving the spinal cord was to produce a paralysis so that the patient could move neither his limbs nor torso. He could control neither his urination nor his bowel movements. The blood supply to his skin was not under the usual control. This results in death of those areas of the skin and causes an infection of the skin and bed sores which get larger and larger in spite of medical treatment where the patient is paralyzed.

In the case of [the victim] the bacteria from the bed sores entered the blood stream, settled in large part in the right lung and the brain, thus leading to the infection which produced death."

The evidence clearly established that appellant started an unbroken chain of causation which resulted in the victim's death. Under these circumstances the evidence was sufficient to establish beyond a reasonable doubt that appellant's stabbing was the cause of death. *Commonwealth v. Roberson*, 485 Pa. 586, 403 A.2d 544 (1979); *Commonwealth v. Green*, 477 Pa. 170, 383 A.2d 877 (1978); *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966).

Appellant points out that although the victim received treatment for the decubitus ulcers, he did not always cooperate in the "techniques of movements which were necessary to correspond with such treatment." Such conduct by the victim, whose weakened physical and mental condition were, without a doubt, caused by appellant, "is not such an intervening and independent act sufficient to break the chain of causation or events between the stabbing and the death." *Commonwealth v. Cheeks, supra*, 423 Pa. at 73–74, 223 A.2d at 294 (1966).

Although the defense introduced the testimony of another medical witness, Dr. Glickman, who, in response to a

hypothetical question, testified that the stab wounds were not a direct and substantial factor in causing death, this conflicting evidence was for the fact finder to resolve. Likewise, it was the fact finder's duty to weigh Dr. Aronson's admitted lack of knowledge and experience with paraplegics. The fact finder was free to reasonably conclude that such facts did not affect Dr. Aronson's expertise as to the body infections and their causes. The matter was one of credibility for the fact finder to resolve.

Appellant next argues that the evidence was insufficient to establish that he acted with malice. We must reject appellant's argument. The facts surrounding the stabbing are as follows:

■ At 11:00 p. m., on November 1, 1974, an argument occurred in front of the victim's house involving appellant, the victim, and the victim's wife. The victim's wife asked appellant to leave from in front of the house. Appellant responded, "Fuck you, lady." The victim then said, "Nobody talks to my wife like that." Appellant then laughed at which time the victim hit appellant with his fist. Appellant then fell back against a car. Appellant regained his position, pulled out a knife and held it behind his body. The victim and appellant then started tussling. Appellant stabbed the victim in the neck, and then after the victim fell, appellant stabbed the victim several times in the back.

The record establishes the use of a deadly weapon on a vital part of the victim's body, and malice may be inferred from that fact. *Commonwealth v. Gause*, 459 Pa. 595, 330 A.2d 856 (1975).

■ Appellant also contends that there is sufficient evidence of provocation in this case which would reduce the crime of murder to involuntary manslaughter. We however cannot agree. Appellant's explanation about his fear and apprehension of the victim were rejected by the fact finder who found that under all of the circumstances the provocation was insufficient to dispel a conclusion that malice was present. After reviewing the record, we are satisfied that

the fact finder's resolution of that issue was not improper as a matter of law. *Commonwealth v. Horne*, 479 Pa. 496, 388 A.2d 1040 (1978).

Judgment of sentence affirmed.

This decision was reached prior to the death of MANDERINO, J.