418 A.2d 554

COMMONWEALTH of Pennsylvania, Appellant,

v.

Leslie GAMBIT.

COMMONWEALTH of Pennsylvania,

v.

Leslie GAMBIT, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Sharmel HOWARD.

COMMONWEALTH of Pennsylvania,

v.

Sharmel HOWARD, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Geneva MASSEY.

COMMONWEALTH of Pennsylvania,

v.

Geneva MASSEY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 11, 1979.

Filed Jan. 25, 1980.

Robert F. Banks, Assistant District Attorney, Williamsport, for Commonwealth, appellant at Nos. 204, 205 and 206; and appellee at 982, 983 and 984.

John M. Humphrey, Williamsport, for appellants at Nos. 982, 983 and 984; and appellees at Nos. 204, 205 and 206.

574

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

These are consolidated appeals from a suppression order of the Court of Common Pleas of Lycoming County. In Nos. 982–984, Leslie Gambit, Sharmel Howard and Geneva Massey [hereafter, appellants] contend that the suppression court erred in refusing to suppress evidence police seized when they searched appellants at the police station after arrest. They argue that the search followed arrests without probable cause. In Nos. 204–206, The Commonwealth contends that the suppression court erred in suppressing evidence obtained from a warrantless search of a car executed after appellants' arrest. We hold that, in Nos. 982–984, the suppression court erred and should have suppressed the evidence seized at the station as the product of arrests without probable cause, and that, in Nos. 204–206, the suppression court correctly suppressed the evidence seized during the search of the car.

At about 2:15 p. m. on July 28, 1978, Mary Dauberman, radio dispatcher for the Williamsport Police Department, received a phone call from an employee of Jones Specialty Shop, a clothing store located in the business district of Williamsport.[1] The caller stated that another employee had just noticed that an expensive suede coat was missing and that she suspected that the coat had been taken by three black women in the store minutes before. She suspected the black women because only a few other customers, all well known to the sales personnel, had been in the store. She gave a detailed description of the three women. Lt. John Reiff was standing by Dauberman when she received the call and heard the conversation. Immediately, he and Corporal George Stack left to investigate the incident. As Reiff departed, he heard the phone ring again but did not hear the ensuing conversation.

1. The parties have stipulated to most of the facts. Where they dispute the facts, we have accepted those facts which, with reasonable basis in the record, support the findings of the suppression court. See Commonwealth v. Kichline, 468 Pa. 265, 361 A.2d 282 (1976).

Dauberman broadcast a radio report based on the call from Jones' Specialty Shop. The second phone call was from another clothing shop located near Jones'. The second caller reported that he had seen three black women, identical in appearance to those in Jones', trying on clothes in his store. Soon after they left, he realized some articles were missing. Dauberman broadcast this message also.

Minutes after leaving the station, Reiff and Stack spotted Gambit and Howard standing by a white car parked in the business district about a half block from the police station. As the officers approached, Reiff saw one of the women place her hand on the door of the car, turn, look in his direction and then begin to walk off slowly in the other direction with the second woman. Reiff called to the women, who walked back towards him. Reiff asked the women to come with him to the station, and the women complied. When he looked in the car's window, Reiff observed a filled black plastic bag in the back seat. Reiff ordered Stack to guard the car while he escorted the women to the station. The doors to the car were locked and a car was parked at each end of the vehicle, blocking its exit. Reiff arrived at the station with the two women at about 2:30.

After watching the car for five minutes, Stack left his post to drive another officer's car to the station. During his absence, some employees of the victimized stores guarded the car. As he returned to the white car, Stack saw another officer, Mnick, standing with the third woman, Massey. He took Massey to the station, after which he returned to the car to guard it. Except for the five minutes when he was away, Stack had the car under constant surveillance until it was searched.

At the station, the police searched all three women, discovering items taken from several stores. All the items had their sales tags, indicating that appellants had not paid for them. None of the women had keys to the car which, the police learned by tracing the license plate, was registered in the name of someone in Pittsburgh. Sometime after 4 p. m., appellants were arraigned.

At about the same time, Reiff began to consider a search of the white car. He sought advice from Kenneth Brown, an assistant district attorney on duty at the station. Brown concluded that grounds existed for a search of the car. Reiff and Brown walked down the hall to the magistrate's office where, they believed, the arraignment was in progress. When they arrived, they learned that the arraignment was over and that the magistrate, the only one on duty, had left to perform a wedding. Reiff believed it would take at least two hours to type an affidavit in support of a search warrant and to present it to another magistrate, who would have to be called at home and requested to come to the station. Reiff said that he did not know whether Stack would be available to guard the car until a magistrate would authorize a search and that a vehicle driven by a black man, who might be a confederate, had been seen circling the block. Brown recommended that grounds existed for a warrantless search. Sometime after 5 p. m., the police searched the car, removing the plastic bag, which contained the suede coat missing from Jones.' They found other stolen goods in the trunk.

The suppression court suppressed the evidence obtained from the search of the car on the ground that the police had performed a warrantless search of a stopped automobile without the necessary exigent circumstances. The court upheld the search at the station on the ground that probable cause existed for the arrest of each appellant.[2] Because suppression of the evidence seized in the car significantly hampered the Commonwealth's ability to prosecute appellants, the trial court permitted the Commonwealth to appeal the suppression order to this Court. *See Steding v. Commonwealth*, 480 Pa. 485, 391 A.2d 989 (1978). Subsequently, this Court filed an order permitting appellants to appeal from that part of the suppression order permitting introduc-

2. Although the suppression court determined that Reiff merely detained the two women to whom he called and did not arrest them until their arrival at the station, the Commonwealth concedes that Reiff arrested the two women at the car.

tion of seized evidence. The two appeals were then consolidated.

■ An officer may perform an arrest without warrant only upon probable cause. Probable cause exists if there are facts available at the time of apprehension which would justify a reasonable man in the belief that a crime has been or is about to be committed and the person arrested probably is the perpetrator. *E. g., Commonwealth ex rel. Marshall v. Gedney*, 478 Pa. 299, 386 A.2d 942 (1978). When Reiff arrested Gambit and Howard at the car, he knew only that they had been seen in Jones' not long before store personnel discovered that a coat was missing. Jones' did not report that anyone had seen any of the women take the coat.

■ The Commonwealth does not argue that the first call, alone or coupled with Reiff's observation of the behavior of the women at the car, supplied probable cause. Rather, the Commonwealth argues that at the time of the arrest at the car, Dauberman, the dispatcher, had received two phone calls, whose contents supplied probable cause. Because Dauberman immediately broadcast the information over the radio, she and other officers of the department listening to the radio knew facts supplying probable cause at the time Reiff executed the arrest. The Commonwealth contends that the knowledge of the dispatcher and the other officers can be imputed to Reiff who, having observed further suspicious conduct at the car, therefore had probable cause to arrest. We do not accept this theory.

■ None of the many cases upon which the Commonwealth relies supports the proposition asserted. It is certainly true that officers, in executing a valid arrest, may rely upon radio broadcasts emanating from police facilities. *See, e. g., Commonwealth v. Hart*, 266 Pa.Super. 190, 403 A.2d 608 (1979). In every case cited, however, the arresting officer either was ordered or directed to perform the arrest by an officer in possession of facts justifying arrest, *see Commonwealth v. Kenney*, 449 Pa. 562, 297 A.2d 794 (1972), received information justifying arrest, *see Commonwealth v.*

*Mayer,* 240 Pa.Super. 181, 362 A.2d 407 (1976) (allocatur denied), or heard information which, coupled with facts be personally observed, provided probable cause to arrest. *See Commonwealth v. Hart, supra.* Thus, in every instance, an officer connected to the arrest knew facts justifying the arrest. In no instance has an arrest been justified where the information providing probable cause was known only to officers unconnected with the arrest. What is missing here is some communication or connection between Reiff and the officers who heard the second broadcast. *See United States v. Vasquez,* 534 F.2d 1142 (5th Cir. 1976), *cert. denied,* 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 (1976).

 Whenever possible, officers of the law must obtain a warrant to execute a search or arrest; a neutral magistrate must determine whether the facts known support an invasion of the privacy guaranteed by the Fourth Amendment. *See, e. g., Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). When circumstances dictate that an officer perform an arrest without first obtaining judicial approval, the officer must know facts justifying a reasonable man in believing that probable cause exists. Thus, the officer exercises his judgment in place of that of the magistrate. *See Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Where, as here, however, no officer connected to the arrest knows the facts which might justify it, no officer exercises the judgment required as a substitute for judicial approval. Information scattered among various officers in a police department cannot substitute for possession of the necessary facts by a single officer related to the arrest. Accordingly, Reiff, aware only of facts which the Commonwealth concedes were insufficient to supply probable cause, performed an illegal arrest.

The arrest of the third woman, Massey, was also without probable cause. Stack came upon Massey standing with another officer, Mnick. Neither Stack nor Mnick testified whether they had heard a broadcast relaying information from both phone calls. Stack may have heard the first

phone call, as he apparently was with Reiff at the dispatcher's desk when the call came in. There is no evidence that he heard any further broadcasts. Mnick may never have heard any broadcasts. Presumably, he had heard some information relating to the thefts, for he apprehended Massey. We cannot assume, however, that he heard information supplying probable cause. It is just as likely that he heard only the first broadcast, and acted upon that information, as that he heard a later report. Thus, even viewing the evidence in the light most favorable to the Commonwealth, *see Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976), we must conclude that Massey's arrest was also illegal.[3]

The search of appellants followed immediately and was the direct result of their arrests. The search was the fruit of the illegal arrests and was not attenuated from the primary illegality by any intervening events. *See Commonwealth v. Brooks*, 468 Pa. 547, 364 A.2d 652 (1976) (evidence tainted by illegal arrest). Consequently, evidence discovered in the search should have been suppressed.

■ The suppression court ruled inadmissible the evidence located in the car because the search of the automobile was not justified by exigent circumstances. We need not determine this issue because the automobile search was improper as the fruit of the illegal arrests. The police decided to search the car only after their search of appellants revealed possession of stolen goods. Until this discovery, the police apparently felt that they lacked sufficient cause to search the car. Inside the car, they had seen only a black, plastic bag containing an unidentified object. Nothing about the car or the bag indicated that either was connected to the thefts. Because the search of the automobile was the direct product of the evidence seized at the station, which, in turn,

---

**3.** We need not decide whether the two phone calls provided probable cause to arrest. *See Commonwealth v. Gilmore*, 447 Pa. 21, 288 A.2d 757 (1972) (probable cause existed to arrest defendants who resembled descriptions of assailants in separate incidents). Nor do we decide whether Dauberman, the dispatcher, was an officer of the department.

580

was the product of illegal arrests, the fruits of the search must be suppressed.[4]

We reverse the order of the suppression court in Nos. 982–984 and order suppression of the evidence obtained in the search of appellants; we affirm the order of the court in Nos. 204–206 suppressing the evidence discovered in the search of the automobile; and remand for proceedings consistent with this opinion.

---

4. The Commonwealth argues that the search of the car, even if not justified by exigent circumstances, should be upheld because the officers acted in good faith upon the recommendation of the assistant district attorney that the search was proper. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (good faith of officer insufficient to justify otherwise improper arrest). We need not decide this question.