494 A.2d 383
COMMONWEALTH of Pennsylvania

v.

Reid EVANS, Appellant.

Superior Court of Pennsylvania.

Argued March 29, 1984.

Filed April 19, 1985.

Reargument Denied June 19, 1985.

120

Stanton M. Lacks, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, WIEAND and McEWEN, JJ.

McEWEN, Judge:

■ We here study an appeal from a judgment of sentence imposed following a jury trial at which appellant was found guilty of second degree murder, robbery, kidnapping, conspiracy and prohibited offensive weapons and sentenced to serve a life term.[1] Appellant presents various allegations of ineffective assistance of counsel[2] and argues that the sentence imposed on multiple inchoate offenses was improper.[3] We affirm the second degree murder and con-

1. Appellant was sentenced to a term of life imprisonment for second degree murder and to concurrent sentences of from five years to ten years for conspiracy and from two and one-half years to five years for the weapons offense, the latter to be served in consecutive fashion. The sentencing judge concluded that the offenses of kidnapping and robbery merged into the second degree murder conviction.

2. Appellant is represented by new counsel on appeal and has thus satisfied the rule that "ineffectiveness of prior counsel must be raised at the earliest stage in the proceedings at which counsel whose ineffectiveness is being challenged no longer represents the appellant." *Commonwealth v. Seachrist,* 478 Pa. 621, 624, 387 A.2d 661, 663 (1978).

3. Prior counsel filed a brief to this Court containing assertions which had neither been raised in post-verdict motions nor expressed in the statement of matters complained of. Nonetheless, newly appointed appellate counsel states in his brief: "issues raised in the prior brief filed by [trial counsel] are adopted by counsel and no additional argument will be made on those issues." Since trial counsel not only failed to comply with Pa.R.Crim.P. 1123, but also failed to heed the directive of the trial judge that a statement of matters complained of be filed, and since appellate counsel does not claim that trial counsel was ineffective by reason of the failure to properly preserve the assertions set forth in the prior brief, those assertions have been waived. *See Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Cardona,* 316 Pa.Super. 381, 463 A.2d 11 (1983).

spiracy convictions, but vacate the judgment of sentence upon the prohibited offensive weapons conviction which was to have been served concurrently with the life sentence for murder.

As the victim, a 68 year old man, approached his parked Cadillac in a shopping center in Lower Merion, Pennsylvania, appellant's two accomplices forced him at the point of appellant's sawed-off shotgun into the back seat of the Cadillac and proceeded to follow appellant who was driving a Volkswagen. Appellant and his accomplices drove through Fairmount Park where they took the victim's wallet before releasing him. The complaint of the victim was recorded by a radio dispatcher:

CALLER: I was coming out of the Acme in Bala and my wife was waiting and I walked to my car and these guys were waiting for me.

RADIO: And what happened?

CALLER: They put me, I can't talk, I have a heart condition.

RADIO: Yeah, well just ...

CALLER: They put me in the car, cleaned me out. They let me out down here. They had a sawed-off shotgun on me. Okay.

RADIO: Okay.

CALLER: So, I'm standing here waiting.

RADIO: All right, what's your car there?

CALLER: No, they went with it. I got a black Seville, Cadillac.

* * * * * *

RADIO: Two males?

CALLER: Pardon me?

RADIO: Two males?

CALLER: Yeah, two black ones and, and there was one in a, another one or two in a little Volkswagen was following.

* * * * * *

RADIO: Just try, try to relax if you can. They'll be right there.

CALLER: Okay.

RADIO: I'm gonna just keep you on the line.

CALLER: Okay.

RADIO: Which way did they go in your Cadillac, do you have any idea?

CALLER: They kept riding along this road that goes past the Playhouse.

RADIO: Do you have any medication that you could be taking or anything?

CALLER: Yeah, I got a nitro.

RADIO: You got it with you?

CALLER: Yeah, I took one.

RADIO: Okay.

CALLER: I'm having a little trouble breathing.

RADIO: Yeah, I, I know it's tough to relax.

CALLER: Yeah, I ...

RADIO: But, but the worst ...

CALLER: I was very ...

RADIO: You know ...

CALLER: Yeah, that's all ...

RADIO: I, I know it's a frightening experience.

CALLER: The first time I ever had this happen.

RADIO: Yeah, If you have to go to the hospital you just tell the police when they get there if that's your condition.

CALLER: No, I don't want, I don't think I have to go to the hospital.

RADIO: All right. I just want to stay on there until you see a, the police come up on you because in that Park sometimes it's a little tricky.

CALLER: I wish they'd get here.

RADIO: Yeah, they, they'll be, they should be there any second. Let me know when you, you know, when they come up on you, they, they should be there by now. You don't see anything yet?

CALLER: I'm having trouble breathing, I wish ...

RADIO: You are? Well, they, they, I ... didn't see anybody fly by you did you, any police cars?

CALLER: No, no.

RADIO: Well, there's several units enroute there, I, I'm following it on the screen here..... I mean, the job's been on.

CALLER: I'm having trouble breathing.

RADIO: You are?

CALLER: Yeah, I'm having ...... yeah, here they are now.

RADIO: All right, tell them about your breathing.

Shortly after the police arrived, they rushed the victim to a nearby hospital where he died within four hours as a result of cardiac arrest.

■ Appellant contends that trial counsel was ineffective since he did not express, and thereby preserve, certain issues in post-verdict motions. The limits of our review upon this contention are well established:

When we study a claim of ineffectiveness of counsel, we first determine whether the claim is of arguable merit. Only if the underlying claim is of arguable merit do we consider whether the strategy chosen by trial counsel has some reasonable basis designed to effectuate the interest of the client. *Commonwealth v. Evans,* 489 Pa. 85, 94, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Kaufman,* 307 Pa.Super. 63, [73], 452 A.2d 1039, 1044 (1982). Our review of the claim that counsel was ineffective is governed by the standard enunciated in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967):

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon

as it is determined that trial counsel's decisions had any reasonable basis.

*Id.*, 427 Pa. at 604–05, 235 A.2d at 352–53. (emphasis in original).

*Commonwealth v. Mayfield,* 318 Pa.Super. 450, 451–54, 465 A.2d 40, 41–42 (1983). *Accord Commonwealth v. Clemmons,* 505 Pa. 356, 361, 479 A.2d 955, 957 (1984). In light of these principles, we address appellant's claims of ineffectiveness.

Appellant first contends that trial counsel was ineffective for failing to preserve in post-verdict motions the assertion that since there was no probable cause to believe that he was a felon, his arrest was unlawful. Appellant argues, therefore, that his inculpatory statement[4] should have been

---

4. Appellant gave the following statement on September 30, 1980, each page of which he initialed and signed:
 "Me, Mark and Wyatt was over at my house on Thursday, 9–18–80. So we decided to go up to City Line Avenue and find somebody to rob.
 We drove my brother's, Reggie's blue Volkswagen. So we rode up there to City Line & 47th Street.
 So Mark looked over and saw a man parking his car in the parking lot. So Mark jumped out and ran over to see where the man went. We found out where the man went and he came back and got back in the Volkswagen, told me to pull up aside him.
 So I pulled up aside him and went over to the donut shop and bought some donuts and as I was coming out they was putting the man inside the car.
 I got in the Volkswagen and started turning down 47th Street and Mark and them turned all the way around from the parking lot and they followed me all the way down 47th Street.
 I turned to Conshohocken and then Belmont and Monument and made a left turn and went up all the way up the road. I turned around because I couldn't see Mark and him. And I saw Mark and then turning the wrong way.
 So I told them to turn and go this way and there was only Mark and Wyatt in the front seat. And so they followed me to North Philly to my grandmother's house, 25th & Nicholas Streets.
 We talked about who could we sell the car to. So we couldn't find anybody to sell it to. So all three of us drove home in the Volkswagen and went to bed. We split up the money and they gave me $5.00 and they kept the rest." (N.T. 191–93)
 The statement of appellant also includes, in part, the following dialogue between the investigating detective and appellant:
 QUESTION: "Did Mark and Wyatt have any guns?"

suppressed as a product of an unlawful arrest. We disagree.

The function of this Court, when reviewing the denial of a motion to suppress, is to determine:

[W]hether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. W.P.,* 302 Pa.Super. 66, 69, 448 A.2d 97, 98 (1982) *quoting Commonwealth v. Hunt,* 280 Pa.Super. 205, 207–208, 421 A.2d 684, 685 (1980). The record, viewed in accordance with this standard, reveals that appellant and three companions were arrested while driving in a different stolen car[5] in Atlantic City, New Jersey, some eight days after the murder. The arresting officer testified at the suppression hearing that his suspicions were aroused when he observed the occupants of the vehicle turn and directly look at him as they drove by him. When the officer followed the vehicle, his suspicions were further aroused because the driver of the vehicle attempted to make two illegal turns into one-way streets. The officer, as a result,

ANSWER: "They had a shotgun."
QUESTION: "Who had the shotgun?"
ANSWER: "Mark did."
QUESTION: "Describe the shotgun."
ANSWER: "Sawed-off shotgun, Sears Roebuck."
QUESTION: "Whose shotgun is it?"
ANSWER: "It's mine. I bought it off the street two years ago."

 * * * * * *

QUESTION: "What was taken from the white man?"
ANSWER: "His wallet and the car."

 * * * * * *

QUESTION: "Whose idea was it to rob somebody?"
ANSWER: "All of ours." (N.T. 193–97).

5. It was established at the suppression hearing that this car had been stolen earlier that same day in Philadelphia by appellant and his accomplices who accosted its owner and forced him into the car by placing a sawed-off shotgun to his head. Again, the trio took a wallet and vehicle registration from the victim before releasing him.

requested a National Crime Information Center (NCIC) computer check of the vehicle's Pennsylvania license tag. The response was immediate and revealed not only "that the vehicle was stolen or used in a criminal act", but also "that 'occupants were armed' ". When a police support unit arrived and the officer had brought the vehicle to a halt, appellant provided the officer with registration for the vehicle, stating that the vehicle was owned by his uncle. When, during that discussion, the officers observed the butt of a sawed-off shotgun protruding from under the driver's seat, appellant, his two accomplices in both criminal episodes and the accomplice in their second robbery were placed under arrest.

The benchmark of a warrantless arrest is the existence of probable cause, namely, whether "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Wagner*, 486 Pa. 548, 556, 406 A.2d 1026, 1030 (1979) *quoting Commonwealth v. Perry*, 468 Pa. 515, 520, 364 A.2d 312, 315 (1976). "A warrantless arrest for a felony will be upheld where police have probable cause to believe (1) that a felony has been committed and (2) that the person to be arrested is the felon." *Commonwealth v. Derrick*, 322 Pa.Super. 517, 532, 469 A.2d 1111, 1119 (1983). An arresting officer, in executing a valid arrest, may rely upon radio broadcasts emanating from police facilities provided, however, that the arresting officer has been either (1) ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest; (2) received information justifying arrest; or (3) heard information which, coupled with facts he personally observed, provided probable cause to arrest. *Commonwealth v. Gambit*, 274 Pa.Super. 571, 577–578, 418 A.2d 554, 557 (1980) *aff'd.*, 501 Pa. 453, 462 A.2d 211 (1983). *Accord Commonwealth v. Prengle*, 293 Pa.Super. 64, 67, 437 A.2d 992, 994 (1981). Moreover, it is

firmly established that NCIC printouts are of sufficient reliability to form the basis of the reasonable belief which is required to establish probable cause for arrest. *Commonwealth v. Riley*, 284 Pa.Super. 280, 285–286, 425 A.2d 813, 815 (1981).

■ We believe that the NCIC information in and of itself provided the arresting officer with sufficient probable cause to justify the warrantless arrest of appellant. Moreover, the arrest was further justified by the plain view discovery of the sawed-off shotgun from within the car. Thus, the arrest was lawful and this claim of ineffective assistance of counsel must be rejected.

Nor is there any merit to the claim that counsel was ineffective by reason of the failure to assert in post-verdict motions that the confession of appellant should have been suppressed on the grounds that appellant had not knowingly and intelligently waived his *Miranda* [6] rights. Judge Joseph T. Murphy conducted the suppression proceedings and found that appellant (1) stated that he wished to give a statement; (2) was advised that the investigation focused upon the kidnapping, robbery and homicide which had occurred in Fairmount Park; and (3) was read his *Miranda* rights and indicated that he did not wish to remain silent. It further appears that appellant provided the investigating officer with a five and one-half page typewritten statement, each page of which he read, reviewed and signed. *See* Note 4 *supra.* We share in the conclusion of Judge Murphy that appellant "knowingly, intelligently and voluntarily waived [his] rights to remain silent and to have counsel present while [he was] being questioned."

■ Appellant further claims that the stewardship of trial counsel was less than effective by reason of the failure of counsel to preserve the assertion that the evidence was insufficient to sustain a conviction of second degree murder. Appellant argues that since the death of the victim

6. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

from cardiac arrest was not foreseeable, the homicide could rise no higher than third degree murder. "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). While it is true that the tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide, *Commonwealth v. Root*, 403 Pa. 571, 580, 170 A.2d 310, 312–14 (1961), "if the wound inflicted by the accused is not itself mortal and a subsequent event is found to be the immediate cause of death, the accused does not escape legal liability if his act started an unbroken chain of causation leading to the death." *Commonwealth v. Robinson*, 468 Pa. 575, 584, 364 A.2d 665, 670 (1976). *Accord Commonwealth v. Green*, 477 Pa. 170, 174, 383 A.2d 877, 879 (1978); *Commonwealth v. Cartagena*, 272 Pa.Super. 485, 489, 416 A.2d 560, 562 (1979). The legal cause of death is thus sufficiently proven if the criminal behavior is shown to have been a direct and substantial factor in bringing about the death. *Commonwealth v. Green, supra*, 477 Pa. at 174, 383 A.2d at 872; *Commonwealth v. Stafford*, 451 Pa. 95, 97, 301 A.2d 600, 602 (1973); *Commonwealth v. Paquette*, 451 Pa. 250, 254, 301 A.2d 837, 839 (1973).[7] Death must, of course, be the consequence of the felony, and not merely a coincidence. *Commonwealth v. Redline*, 391 Pa. 486, 495, 137 A.2d 472, 476

7. *See and compare: Commonwealth v. Hicks*, 483 Pa. 305, 386–387, 396 A.2d 1183, 1186–1187 (1979) (murder conviction sustained where 63 year old victim died from acute cardiac failure due to pre-existing arteriosclerotic heart disease which had been aggravated by severe stress as a result of an assault by the accused); *Commonwealth v. Kingsley*, 480 Pa. 560, 566–570, 391 A.2d 1027, 1030–1032 (1978) (evidence sufficient to sustain finding that decedent's death was caused by accused where decedent died nine hours following a physical assault and after decedent had refused medical attention); *Commonwealth v. Rice*, 477 Pa. 221, 225, 383 A.2d 903, 905 (1978) (felony-murder conviction sustained where the accused grabbed the victim's purse as a result of which she fell to the ground and struck her head on the sidewalk causing her death); *Commonwealth v. Hicks*, 466 Pa. 499, 505, 353 A.2d 803, 804–805 (1976) (voluntary manslaughter conviction upheld where multiplicity of blows by accused complicated the victim's pre-existing heart condition causing his death).

(1958); *Commonwealth v. Lang*, 285 Pa. 34, 46, 426 A.2d 691, 694–695 (1981).

 The evidence was clearly sufficient to convict appellant of second degree murder. The Commonwealth introduced testimony of a forensic pathologist who opined:

The cause of death was due to the arteriosclerotic heart disease, the heart disease I described aggravated by the robbery and the kidnapping. The manner of death was homicide.

The statute defining second degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. It cannot be denied that the felonious conduct of appellant not only "started an unbroken chain of causation", but also was a "direct and substantial factor" in bringing about the death of the victim. There is, therefore, no merit to this sufficiency assertion. Accordingly, the claim that counsel was less than effective for this reason is rejected.

 Appellant further contends that trial counsel was ineffective for failing either to express a motion in limine to preclude admission of evidence of other crimes or to move for a mistrial when the Commonwealth sought to introduce such evidence. The Commonwealth presented testimony concerning the circumstances surrounding the arrest of appellant and included reference to (1) the NCIC broadcast which verified that appellant and his accomplices were riding in a car which had been stolen or used in a crime and were armed; (2) the fact that appellant had produced a registration card for that vehicle and indicated that it was his uncle's car; and (3) the discovery of the sawed-off shotgun from under the driver's seat. The Commonwealth, in addition, cross-examined appellant upon the open charges against him in connection with that stolen automobile. "It is well settled in Pennsylvania that evidence of criminal activity not charged in the indictment or information on which the defendant is being tried cannot be introduced at trial except in certain limited circumstances." *Common-*

132

*wealth v. Fuller,* 479 Pa. 353, 357, 388 A.2d 693, 694–95 (1978). " 'The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectively strip him of the presumption of innocence' ". *Commonwealth v. Spruill,* 480 Pa. 601, 604–605, 391 A.2d 1048, 1049–1050 (1978) *quoting Commonwealth v. Terry,* 462 Pa. 595, 599–600, 342 A.2d 92, 94–95 (1975). An exception to this general rule exists where the evidence of other criminal activity forms part of the history of the event or serves to enhance the natural development of the facts. *Commonwealth v. Brown,* 462 Pa. 578, 591, 342 A.2d 84, 90 (1975); *Commonwealth v. Lewis,* 314 Pa.Super. 298, 306, 460 A.2d 1149, 1153 (1983); *Commonwealth v. Davenport,* 286 Pa.Super. 212, 215, 428 A.2d 647, 649 (1981).

As heretofore observed, our preliminary inquiry in reviewing an allegation of ineffective assistance of counsel is whether the claim that counsel failed to assert possessed arguable merit. *Commonwealth v. Parker,* 503 Pa. 336, 339, 469 A.2d 582, 584 (1983); *Commonwealth v. Lesko,* 502 Pa. 511, 514, 467 A.2d 307, 309 (1983); *Commonwealth v. Hubbard,* 472 Pa. 259, 276, 372 A.2d 687, 695 (1977). Only where the underlying issue is found to be of arguable merit do we proceed to determine whether the particular course of action chosen by counsel had *some reasonable basis* designed to effectuate the interests of his client. *Commonwealth v. Clemmons, supra,* 505 Pa. at 361, 479 A.2d at 957; *Commonwealth v. Garvin,* 335 Pa.Super. 560, 564, 485 A.2d 36, 38 (1984).

We agree with appellant that there is arguable merit to his contention that trial counsel should have attempted to prevent the jury from learning of the criminal activity which resulted in his arrest in Atlantic City, New

Jersey. "The failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel." *Commonwealth v. Metzger,* 295 Pa.Super. 267, 272, 441 A.2d 1225, 1228 (1981). Under the circumstances of the instant case, however, we need not remand for an evidentiary hearing for the purpose of determining whether counsel had a reasonable basis for failing to challenge the admission of the evidence of the unrelated criminal activity. Assuming, *arguendo,* that counsel did *not* have a reasonable basis for his challenged conduct, appellant would still not be entitled to the relief he seeks.

This Court, sitting *en banc,* in *Commonwealth v. Garvin, supra,* concluded that the use of the harmless error standard is appropriate in determining whether a defendant is entitled to a new trial based upon a claim of ineffective assistance of counsel. "A finding that appellant is entitled to a new trial cannot be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized, resulting in prejudice to the defendant." *Commonwealth v. Garvin, supra,* 335 Pa.Superior Ct. at 566, 485 A.2d at 39 (citations omitted). *See also Commonwealth v. Galloway,* 302 Pa.Super. 145, 154, 448 A.2d 568, 573 (1982).

We are convinced as a result of a review of the evidence in the instant case, which included appellant's confession, that appellant was not prejudiced by the failure of counsel, even if it was the result of neglect, to challenge the admission of evidence concerning the unrelated criminal activity. Since we find the omission, even if error, to have been harmless, we reject appellant's argument that he is entitled to a new trial as a result of counsel's failure to attempt to prevent the admission of the evidence of unrelated criminal activity.

■ Appellant next challenges the legality of his sentence on the basis of the statutory bar against conviction of multiple inchoate crimes which is set forth in Section 906 of the Crimes Code, 18 Pa.C.S. § 906. "A person may not be convicted of more than one Section 906 offense defined by

this chapter for conduct designed to commit or to culminate in the commission of the same crime." Appellant was determined by a jury to be guilty of two such inchoate crimes, namely, criminal conspiracy, 18 Pa.C.S. § 903, and prohibited offensive weapons, 18 Pa.C.S. § 908, and sentences were imposed upon each offense. The aforequoted mandate of Section 906, however, precludes the imposition of separate sentences upon each of these crimes. We have the option either to remand for resentencing or to amend the sentence directly. *Commonwealth v. Fulton*, 315 Pa. Super. 420, 423, 462 A.2d 265, 267 (1983); *Commonwealth v. Ford*, 315 Pa.Super. 280, 296–300, 461 A.2d 1281, 1289–1290 (1983); *Commonwealth v. Von Aczel*, 295 Pa.Super. 242, 254, 441 A.2d 750, 756 (1981). The sentencing judge imposed the maximum term of imprisonment for each inchoate offense and directed that they be served in consecutive fashion. Since only one of the inchoate convictions imposed in the instant case can be permitted to stand, we vacate the sentence imposed upon the lesser of the two offenses, the prohibited offensive weapons conviction. *Commonwealth v. Fulton, supra; Commonwealth v. Ford, supra; Commonwealth v. Von Aczel, supra.* The sentence imposed for criminal conspiracy is, of course, affirmed.

Judgment of sentence affirmed with the exception of the judgment of sentence for prohibited offensive weapons which is vacated. Jurisdiction relinquished.

BROSKY, J., files a concurring opinion.

WIEAND, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring:

I agree that the conviction for second degree murder and conspiracy should be affirmed and that the sentence for prohibited offensive weapons should be vacated. However, I believe the issue of whether the prohibited offensive weapons sentence must be vacated merits further discussion.

The Commonwealth cites the recent case of *Commonwealth v. Brown*, 336 Pa.Super. 628, 486 A.2d 441 (1984), for the proposition that 18 Pa.C.S. § 906 does not require that the prohibited offensive weapons sentence be vacated. In *Brown*, the defendant had been sentenced for attempted burglary, conspiracy, and prohibited offensive weapons. A panel of this Court vacated the conspiracy sentence, holding that under Section 906 the attempted burglary and conspiracy convictions merged as both offenses were the result of "conduct designed to commit or to culminate in the commission of the same crime," see 18 Pa.C.S. § 906. The *Brown* court also held that the sentence imposed for prohibited offensive weapons could stand because the record indicated that the defendant's possession of the weapon was not designed to culminate in the commission of a burglary. However, the panel also noted *in dicta* that "in *Commonwealth v. Zappacosta*, 265 Pa.Super. 71, 401 A.2d 805 (1979), this Court held that Section 906 was intended to apply only to the offenses of conspiracy, solicitation and attempt," *Brown*, 336 Pa.Superior Ct. at 635, 486 A.2d at 445.

The Commonwealth now argues that *Brown* is precedent for the proposition that Section 906 was intended to apply only to conspiracy, solicitation and attempt and, therefore, that the sentence for prohibited offensive weapons should be allowed to stand. I find the Commonwealth's argument to be most disingenuous.

As noted above, the statement in *Brown* relied upon by the Commonwealth is not binding precedent, but merely dicta. Furthermore, the language in the sole case relied on in that dicta, *Zappacosta*, was itself dicta. There, as in *Brown*, the court held that the two inchoate offenses charged had not involved conduct designed to culminate in the commission of the same crime. There, as in *Brown*, the court nevertheless went on to state that Section 906 was meant to apply only to conspiracy, solicitation and attempt.[1]

---

1. I note that *Brown* is the only appellate decision to have ever cited *Zappacosta*.

Aside from relying solely on dicta, the Commonwealth's argument flies in the face of the plain words of Section 906 that "[a] person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime." These words admit of no possible limitation to the offenses of conspiracy, solicitation and attempt and, indeed, cases both prior and subsequent to *Zappacosta* have established that Section 906 means precisely what it says. See, e.g., *Commonwealth v. Gonzales*, 297 Pa.Super. 66, 443 A.2d 301 (1982) (Section 906 prohibits convictions of both conspiracy and possessing instruments of crime); *Commonwealth v. Turner*, 290 Pa.Super. 428, 434 A.2d 827 (1981) (Section 906 prohibits convictions of both criminal attempt and possessing instruments of crime); *Commonwealth v. Crocker*, 256 Pa.Super. 63, 389 A.2d 601 (1978) (same); see also, Burkoff, Criminal Offenses and Defenses in Pa., p. 159 (*Zappacosta* suggestion was obiter dictum, Superior Court has clearly established that Section 906 applies to *all* offenses enumerated in Chapter 9 of the Crimes Code).

Considering the dicta relied on by the Commonwealth, the numerous cases holding contrary to that dicta, and the express language of Section 906, I must conclude that that section does *not* apply only to the offenses of conspiracy, solicitation and attempt. Since I find that Section 906 can also prohibit a conviction for the inchoate offense of prohibited offensive weapons, I agree that the judgment of sentence for prohibited offensive weapons must be vacated.

WIEAND, Judge, concurring and dissenting:

I agree with the majority that there is at least arguable merit to appellant's contention that trial counsel should have prevented the jury from learning about the unrelated crimes for which appellant was arrested in Atlantic City. I am unable to agree, however, that the introduction of evidence of unrelated criminal activity was harmless. See generally: *Commonwealth v. Martinez*, 301 Pa.Super. 121, 447 A.2d 272 (1982). Therefore, I would remand for an

evidentiary hearing limited to counsel's stewardship regarding the introduction of evidence of unrelated criminal activity. By an evidentiary hearing it can be determined whether the course chosen by counsel had a reasonable basis designed to effectuate the interests of his client. If there was such a reasonable basis, the judgment of sentence should be affirmed. If not, appellant should be awarded a new trial.

In all other respects I agree with and join Judge McEWEN's careful analysis and disposition.