J-S43039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHAIRIL AMRIL SARAGIH | |
| Appellant | No. 128 EDA 2015 |

Appeal from the Judgment of Sentence August 14, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000357-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED AUGUST 26, 2015**

Appellant, Chairil Amril Saragih, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for solicitation of involuntary deviate sexual intercourse ("IDSI") with a person less than sixteen (16) years of age, attempt to commit involuntary deviate sexual intercourse with a person less than sixteen (16) years of age, and criminal use of a communication facility.[1] We affirm in part and vacate in part.

The trial court's Rule 1925(a) opinion sets forth the relevant facts and procedural history of this case; it also incorporates the findings of fact and conclusions of law of the suppression court, filed April 25, 2014, 1-3.

---

[1] 18 Pa.C.S.A. §§ 902(a), 901(a), 7512(a), respectively.

Therefore, we only briefly summarize them as follows. Sergeant Smith is an undercover police officer working for the Delaware County Internet Crimes Against Children task force. In this capacity, he frequently monitors websites like Craigslist, looking for people soliciting sexual encounters with minors. On November 1, 2013, Sergeant Smith replied to Appellant's post on Craigslist, which indicated Appellant was looking for a sexual encounter with "young college boys." Sergeant Smith posed as a fifteen-year-old boy named "Sam." Following several graphic email communications, Appellant and "Sam" arranged to meet on November 8, 2013, at an ice-skating rink in Aston, PA. Appellant and "Sam" had previously agreed *via* email that they would participate in sex acts at this meeting.

Appellant arrived at the ice-skating rink, and the police apprehended him, handcuffed him, and took him into custody. Appellant waited in handcuffs at the station for fifteen minutes while Sergeant Smith gathered his paperwork for the case. Sergeant Smith and another detective then escorted Appellant to an interview room, where Sergeant Smith read Appellant his *Miranda*[2] rights before beginning the interview. Appellant demonstrated a thorough understanding of the English language when he waived his *Miranda* rights. During the interview, Appellant admitted he had sent the sexually explicit emails to "Sam," knowing "Sam" was fifteen years

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

old.

Procedurally, the suppression court heard argument on April 24, 2014, regarding Appellant's pre-trial motion to suppress the statements he made in the police station. Ultimately, the court denied the motion to suppress in an order issued on April 25, 2014. The case proceeded to a jury trial on May 7, 2014, and the jury found Appellant guilty of solicitation of IDSI, attempt to commit IDSI, and criminal use of a communication facility. On August 14, 2014, the court sentenced Appellant to three (3) to six (6) years' incarceration each for the solicitation of IDSI conviction and the attempt to commit IDSI conviction, to run concurrently. The court also sentenced Appellant to one (1) year of probation for the criminal use of a communication facility conviction, to run consecutively to the other sentences. On August 22, 2014, Appellant timely filed a post-sentence motion contesting the sufficiency and weight of the evidence, and alleging various suppression claims. The court held a hearing on Appellant's motion on September 17, 2014, and denied it on September 25, 2014. Appellant timely filed a notice of appeal on October 24, 2014. On November 13, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and, with one extension, Appellant timely complied.

Appellant raises two issues for our review on appeal:

WHETHER THE [TRIAL] COURT ERRED WHEN IT REFUSED TO SUPPRESS THE STATEMENTS MADE BY [APPELLANT]

SINCE THEY WERE SUPPLIED UNDER COERCIVE CONDITIONS, AND BECAUSE THE STATEMENTS AND *MIRANDA* WAIVER WERE NOT KNOWING, VOLUNTARY, OR INTELLIGENT?

WHETHER THE CONVICTIONS AND JUDGMENT OF SENTENCE FOR SOLICITATION TO COMMIT INVOLUNTARY DEVIATE SEXUAL INTERCOURSE (PERSON LESS THAN AGE SIXTEEN), AND ATTEMPTED INVOLUNTARY DEVIATE SEXUAL INTERCOURSE (PERSON LESS THAN AGE SIXTEEN) ARE ILLEGAL SINCE A PERSON MAY NOT BE CONVICTED OF MORE THAN ONE OF THESE INCHOATE OFFENSES FOR ALLEGED CONDUCT THAT IS DESIGNED TO CULMINATE IN THE SAME CRIME?

(Appellant's Brief at 5).

In his first issue, Appellant argues the circumstances of his interview with the police at the station constituted unlawful coercion. Appellant maintains the police knew Appellant did not fully understand English, but they failed to provide Appellant with a translator. Appellant claims the police kept him in tight handcuffs during the entire interview process. Appellant contends the police instructed him to discuss the emails at issue. Appellant asserts that the trial court should not have considered his *Miranda* waiver knowing, intelligent, or voluntary under these circumstances. Appellant concludes this Court must reverse the trial court's suppression ruling and grant Appellant a new trial. We disagree.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 874 A.2d

- 4 -

108, 115 (Pa.Super. 2005) (quoting *Commonwealth v. LaMonte*, 859 A.2d 495, 499 (Pa.Super. 2004)).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Jones, supra* at 115 (quoting *Commonwealth v. Grundza*, 819 A.2d 66, 67 (Pa.Super. 2003), *appeal denied*, 574 Pa. 764, 832 A.2d 435 (2003)).

Generally, statements made during custodial interrogation are presumptively involuntary, unless the police first inform the accused of his *Miranda* rights. *Commonwealth v. DiStefano*, 782 A.2d 574, 579 (Pa.Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. Gaul*, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied*, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). Whether a person is in custody depends on "whether the person is physically denied [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation." *Commonwealth v. Williams*, 941 A.2d 14, 30-31 (Pa.Super. 2008) (*en banc*) (quoting *Commonwealth v. Clayton Williams*, 539 Pa. 61, 74, 650 A.2d 420, 427 (1994)).

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ***Miranda, supra*** at 444, 86 S.Ct at 1612, 16 L.Ed.2d at \_\_\_. "Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect." ***Williams, supra*** at 30 (quoting ***Commonwealth v. Ingram***, 814 A.2d 264, 271 (Pa.Super. 2002), *appeal denied*, 573 Pa. 671, 821 A.2d 586 (2003)).

We also observe:

> The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review. Moreover, the totality of the circumstances must be considered in evaluating the voluntariness of a confession. The determination of whether a defendant has validly waived his ***Miranda*** rights depends upon a two-prong analysis: (1) whether the waiver was voluntary, in the sense that defendant's choice was not the end result of governmental pressure, and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

***Commonwealth v. Mitchell***, 588 Pa. 19, 53-54, 902 A.2d 430, 451 (2006), *cert. denied*, 549 U.S. 1169, 127 S.Ct. 1126, 166 L.Ed.2d 897 (2007). "Only if the totality of the circumstances surrounding the interrogation reveals **both** an uncoerced choice **and** the requisite level of comprehension may a court properly conclude that the ***Miranda*** rights have been waived. ***Commonwealth v. Cephas***, 522 A.2d 63, 65 (Pa.Super. 1987), *appeal denied*, 516 Pa. 616, 531 A.2d 1118 (1987), *cert. denied*, 484

U.S. 981, 108 S.Ct. 495, 98 L.Ed.2d 494 (1987) (emphasis added). The Commonwealth has the burden to prove "by a preponderance of the evidence that the waiver is voluntary, knowing, and intelligent." *Id.*

When assessing voluntariness the court should look at the following factors: (1) the duration and means of the interrogation; (2) the physical and psychological state of the accused; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors WHICH could drain a person's ability to withstand suggestion and coercion. *Commonwealth v. Nester*, 551 Pa. 157, 164, 709 A.2d 879, 883 (1998). *See also Commonwealth v. Sanabria*, 478 Pa. 22, 385 A.2d 1292 (1978) (holding appellant's waiver of his *Miranda* rights was knowing, voluntary, and intelligent despite appellant's claimed difficulty in understanding English; appellant's ability to communicate effectively in English with police before and after his arrest belied his claims); *Commonwealth v. Padilla*, 854 A.2d 549 (Pa.Super. 2004) (holding appellant possessed sufficient fluency in English to understand verbal communication despite his inability to read or write English; statements made after police read *Miranda* warnings in English did not require suppression).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable John P. Capuzzi, Sr., we conclude Appellant's first issue merits no relief. The trial

court opinion comprehensively discusses and properly disposes of Appellant's first question. (*See* Trial Court Opinion, filed January 8, 2015, at 13, incorporating suppression court's Findings of Fact and Conclusions of Law, filed April 25, 2014, at 1-5) (finding: police did not question Appellant prior to recorded interview; audio recording of interview clearly demonstrated Appellant had no difficulty understanding or communicating in English; recording also verified police read Appellant his *Miranda* rights prior to any questioning; police did not promise Appellant anything or threaten him to give a statement; police loosened Appellant's handcuffs after he complained they were too tight; Appellant voluntarily gave statement to police regarding sexually explicit emails he sent and his plan to meet with "Sam" to engage in sexual activity; absence of translator did not render Appellant's confession unknowing or coerced; Appellant's waiver of his *Miranda* rights was knowing, intelligent, and voluntary). The record supports the court's conclusion that Appellant's statements were knowingly, intelligently, and voluntarily made. Thus, as to Appellant's first issue, we affirm on the basis of the trial court opinions.

In his second issue, Appellant argues his attempt and solicitation convictions stem from conduct designed to culminate in the commission of the same crime. Appellant contends Pennsylvania law prohibits sentencing of a defendant on more than one inchoate conviction. Appellant maintains the court imposed a concurrent sentence of three (3) to six (6) years on

both the attempt and the solicitation convictions. Appellant concludes the sentence is illegal, and this Court must vacate the sentence on Appellant's attempt conviction, as the trial court has recommended. We agree.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Nero***, 58 A.3d 802, 806 (Pa.Super. 2012), *appeal denied*, 621 Pa. 655, 72 A.3d 602 (2013). "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." ***Commonwealth v. Poland***, 26 A.3d 518, 523 (Pa.Super. 2011), *appeal denied*, 614 Pa. 702, 37 A.3d 1195 (2012).

Section 906 of the Crimes Code provides:

> **§ 906.  Multiple convictions of inchoate crimes barred**
>
> A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.

18 Pa.C.S.A. § 906. In this context, "When the law speaks of a 'conviction,' it means a **judgment**, and not merely a **verdict**, which in common parlance is called a conviction." ***Commonwealth v. Maguire***, 452 A.2d 1047, 1049 (Pa.Super. 1982) (emphasis in original). "When a trial court is faced with a jury verdict of guilty of more than one inchoate crime, it is required by

Section 906 to render a judgment of sentence for no more than one of those crimes." *Id.* at 1050. "[I]nchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Commonwealth v. Graves*, 510 Pa. 423, 424, 508 A.2d 1198, 1198 (1986). Section 906 "is designed to eliminate multiple convictions, *i.e.*, judgments of sentence, for conduct which constitutes preparation for a single criminal objective." *Commonwealth v. Grekis*, 601 A.2d 1284, 1295 (Pa.Super. 1992). *But see Commonwealth v. Jacobs*, 614 Pa. 664, 39 A.3d 977 (2012) (holding appellant's sentences for attempt to escape and conspiracy to commit escape from prison did not merge under Section 906, where conspiracy conviction was based on joint plan to escape, while attempt to escape conviction involved either or both escapes).

"[W]here the trial court has erroneously…sentenced an appellant for two inchoate crimes, the remedy has been either to amend the sentence…or to remand for resentencing for either one or the other." *Maguire, supra* at 1050. *See also In Interest of Mark C.*, 489 A.2d 887 (Pa.Super. 1985) (holding when trial court errs by sentencing appellant on both inchoate crimes, appellate court has option either to remand for resentencing or to amend sentence directly); *Commonwealth v. Watts*, 465 A.2d 1267 (Pa.Super. 1983) (vacating appellant's judgment of sentence for one inchoate crime and affirming judgment of sentence for other crime where

- 10 -

trial court imposed concurrent sentences on each conviction).

Instantly, the trial court observed:

Appellant argues, pursuant to 18 Pa.C.S.A. § 906, that it was illegal for the jury to convict him of both criminal solicitation and criminal attempt to involuntary deviate sexual intercourse. However, [S]ection 906 defines conviction as "a judgment of sentence not a finding of guilt by the jury," therefore; Appellant's argument is without merit.

Next, Appellant argues that it was illegal for this [c]ourt to sentence him on both the criminal solicitation and criminal attempt to commit involuntary deviate sexual intercourse. This [c]ourt agrees that 18 Pa.C.S.A. § 906 is applicable. Therefore, this [c]ourt respectfully [re]quests that the judgment of sentence for Count 6: Criminal Attempt to Commit Involuntary Deviate Sexual Intercourse with a Person Less than 16 Years of Age be vacated and the rest of Appellant's sentence be affirmed.

(Trial Court Opinion, filed January 8, 2015, at 12-13). We agree. The jury properly convicted Appellant of both offenses, but the offenses should have merged for sentencing purposes. Because the court has asked us to amend the sentence directly by vacating the judgment of sentence for attempt to commit IDSI, we vacate the judgment of sentence for that conviction and affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2015

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CRIMINAL**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | CP-23-CR-0357-2014 |
| **V.** | |
| **Chairil Saragih** | |

A. Sheldon Kovach, Esquire, Deputy District Attorney, for the Commonwealth
Steven M. Pappi, Esquire, for the Appellant

## O P I N I O N

Capuzzi, J.                                                          Filed: 1-8-15

      This is an appeal from this Court's sentence imposed on August 14, 2014. On appeal, Appellant alleges that (1) his convictions and sentences for Criminal Attempt to Involuntary Deviate Sexual Intercourse and Criminal Solicitation to Involuntary Deviate Sexual Intercourse are illegal because they are both inchoate offenses; and (2) this Court erred in suppressing the statements Appellant made to police because his statements and *Miranda* waiver were supplied to police under coercive conditions and not knowingly, intelligently, or voluntarily given. For the forthcoming reasons, this Court's denial of Appellant's motion to suppress should be affirmed; however, this Court agrees with Appellant that his sentence is illegal and respectfully requests that the Superior Court vacate judgment of sentence on Count 6: Criminal Attempt to Involuntary Deviate Sexual Intercourse and affirm the sentence for Count 1: Criminal

1

*35*

Solicitation to Involuntary Deviate Sexual Intercourse and Count 11: Criminal Use of a Communication Facility.

**FACTUAL BASIS**

Sergeant Gary Smith has been a patrol sergeant for Aston Township Police Department for twenty-six years. [N.T., 5/7/2014, p. 33]. Sergeant Smith is also employed by the Delaware County District Attorney's Office as part of the Internet Crimes Against Children (ICAC) Task Force; a task force comprised of federal, state, and local law enforcement who conduct online investigations, respond to complaints from parents and other people about children being sexually exploited over the internet and lead community education, schools, and other groups. [N.T., 5/7/2014, p. 34]. When acting in an undercover capacity online, Sergeant Smith patrols the internet for different ads containing certain keywords, specifically adults looking for younger children for sexual activity. [N.T., 5/7/1014, p.34].

Sergeant Smith typically looks for these ads on Craigslist, which he describes as: "an online company that, they have all types of personal ads, sell things, buy things, anything you want to do, look for, purchase, learn, it's all on Craigslist." [N.T., 5/7/2014, p. 35]. Technically, anyone can post an ad to the site; the only time there is an age requirement is to post in the personal ad section, and at that, a person simply has to click the box that says they are over eighteen. [N.T., 5/7/2014, p. 35]. In his experience as an ICAC Task Force member, Sergeant Smith knows that children under eighteen use the personal ad section. [N.T., 5/7/2014, p. 37]. Sergeant Smith accesses

2

the male for male section of the personal ads and then looks for posts about men seeking younger men. When he finds one, Sergeant Smith replies to the add by saying "hey, what's up" and then waits to see if the person who posted the add replies. [N.T., 5/7/2-014, p.38].

On November 1, 2013, Sergeant Smith was acting in his capacity as an ICAC Task Force Agent and was browsing Craigslist, particularly the male for male personal ad section. Sergeant Smith was acting in an undercover capacity as "Sam," a 15 year old boy. Sergeant Smith came across a post by Appellant. In the subject line the post read, "any young college boys, 18 to 24, need a BJ M for M, 39, Philly." [1] Based on his experience, Sergeant Smith explained that BJ meant blow job. The body of the post said, "looking for college boys, 18 to 24, y-o who need BJ to completion, hung and uncut, sit back and relax, enjoy my mouth and shoot that load down my throat, no recip necessary.' [N.T., 5/7/2014 p. 42].

Sergeant Smith replied by clicking on the ad, which directs you to the poster's email address associated with the post. [N.T., 5/7/2014 p. 43]. Sergeant Smith's account is associated with the email address SammyBPA99@gmail.com [N.T., 5/7/2014 p. 48]. Appellant's craigslist email was: 36MD4-4165539652@peers.craiglist.org . The following conversation ensued between Sergeant Smith as "Sam" and Appellant:

---

[1] Based on his training and experience, Sergeant Smith explained that even though the post said seeking 18-24 year old males, he responded because if you put any age under 18 the post will automatically be flagged and not permitted on the site. So, someone looking for a younger child would have to post at least 18. [N.T., 5/7/2014, p. 89].

3

**Sam:** "Hey. What's up?"

**Appellant:** "Not much, man, age and stats?"

**Sam:** "15, about 5'8", at 140, I'm new at this. HBU?" [2]

**Appellant:** "how big is tour dick? Cut or uncut? Have you a pic of your dic? 5'7, 155, just looking to suck." [3]

**Sam:** "I don't know never measured it, is that what you like to do?"

Appellant: I'm looking to give BJ, period. I will suck you long and slow until you come in my mouth, period; I will swallow if you want me to."

**Sam:** "Never done that before, really."

**Appellant:** "Well if you want to, if you want to, I guess, go for it—or, if you want to, it come over, I will suck you and make you feel good." [4]

**Appellant:** I will suck you and make you moan and I can only it's b-r-g me to keep sucking. [5]

**Sam:** "Where are you from?"

**Appellant:** "you?"

**Sam:** Delaware County, do you know where that is?"

**Appellant:** "That's far, man. Can you travel here?"

**Sam:** "I don't think so because I'm too young to drive. Do you drive?"

**Appellant:** "I do. Where is Delco, and send me your face pic."

**Sam:** "Near 95."

**Appellant:** "Can you send me your pic?"

---

[2] "HBU" is short for how about you.

[3] Sergeant Smith explained that he understood "tour" to mean your and "dic" to mean dick. [N.T., 5/7/2014 p. 53].

[4] Sergeant Smith testified that Appellant's misspellings did not confuse him, that the message Appellant was trying to get across was clear. [N.T., 5/7/2014, p. 54].

[5] Sergeant Smith took "brg" to mean beg. [N.T., 5/7/2014, p. 54].

**Sam:** "I can; HBU?"

**Appellant:** "yes"

**Appellant:** "send me your pic; I can drive to you and I can suck you in my car."

**Sam:** "Okay, when I send it will you send me a picture of you so I know what you look like too?"

At this point in the conversation, Sergeant Smith sent Appellant a picture of a fellow officer when he was fifteen, marked as CW-2. Appellant also sent his picture. The conversation continued:

**Sam:** "Nice, what is your name and how old are you?"

**Appellant:** "Alec, 37"

**Sam:** "Hi Alec, do you know where Aston or Upper Chichester is?"

**Appellant:** "Not really, maybe you can give me an address close to you; I will google it."

**Sam:** "I hang out at a place called IceWorks on Dutton Mill Road in Aston."

**Appellant:** "I need a full address to put in the GPS, what's your name, man?"

**Sam:** "Sam, I should be here over the weekend and be able to get and send it to you."

**Appellant:** "Cool. When are you usually free?"

**Appellant:** "Are you ever free nighttime? Or early daytime?"

**Sam:** "most nights coming up this week because of midterm exams are over."

**Sam:** "days on the weekend and around 3 when I get out of school, HBU?"[6]

**Appellant:** "Nice, email me your address, maybe I can get a hotel room so I can suck you real long. You never got a BJ at all, from a girl, maybe?"

---

[6] Sergeant Smith testified that he was using acronyms and was trying to be brief in his responses because that his how kids talk and people in general communicate over the internet. [N.T., 5/7/2014, p. 62].

**Sam:** "No. What's it like?"

**Appellant:** "I'm only free after 5:00. I'm free all day Wednesday."

**Sam:** "What kind of car do you have?"

**Appellant:** "Sedan, and I don't have tinted windows. That's why I want to get a room, so I can suck you better."

**Appellant:** It's good, better than jerk off, lol, can I have your email address, man?"

**Sam:** "sure it's sammybpa99@gmail.com. What's yours?"

**Appellant:** "willpleaseyou99@gmail.com."

**Sam:** "Got it. Can I email you later? My mom just came home and wants to eat. Do you want to use Craig's List or your email?"

Appellant: "use my email. Don't forget to email me."

At this point, the November 1st, 2013, conversation between Appellant and Sergeant Smith ended. The conversation started at 4:51p.m., and ended at 6:56p.m. [N.T., 5/7/2014, p42-65].

On the following day, Saturday, November 2, 2013, Sergeant Smith followed Appellant's request for him to send an email. The two engaged in a brief conversation. On Monday, November 4, 2013, the following conversation occurred between Sergeant Smith and Appellant via their email addresses:

**Sam:** "Hey"

**Appellant:** "how are you?"

**Appellant:** "Did you get the address of the place?"

**Sam:** "I had to look it up online. It says 3100 Dutton Mill Road, Aston, PA 19014."

6

**Appellant:** "Thanks, when are you free and do you know any hotels around your place?"

**Sam:** "I think there are a few near here. What do you want to do?"

**Appellant:** "I will get a room for us. I can give you a nice BJ there."

**Sam:** "K. I will have time Thursday or Friday night. Will you pick me up near Iceworks?

**Appellant:** "What actually are you looking to get into?"

**Sam:** "I'm not sure, anything else- not sure, anything else you're into/I will have my bike but there is a place I can hide it right across so we don't have to take it."

**Appellant:** "T, I can pick up-I'm sorry, T, I can pick you up there around 7p.m."

Sergeant: "which night?"

**Appellant:** "You're going to have your bike right across where? Ice works? Or hotel?"

**Sam:** " From IceWorks, if that's okay. There is a business center right across the street, unless you have a truck."

**Appellant:** "I am open to do whatever you want to try. You want to try anal? You want to get fucked? Or you want to fuck?"

**Appellant:** "I don't have a truck. BTW, how much time can you spare? What time do you have to go home? Or can you spend the night with me?"

**Sam:** "not sure, but K, do you know which night?"

**Appellant:** "Friday is better."

**Sam:** "Me, too."

**Appellant:** "Nice, do you know the name of a hotel close to IceWorks so I can book it online?"

**Sam:** "Not sure but I know that kids from Iceworks come from all over."

**Appellant:** "I will try to look online ☺ "

**Appellant:** "Do you want to try to get a rim job?"

**Sam:** "okay. But what's that?"

7

**Appellant:** "Can't wait to have your dick in my mouth. ☺ Where do you want to come? My mouth or face? Do you want me to swallow your cum?"

**Appellant:** "Rim job means I will eat out your hole"

**Sam:** "Wow. K"

**Appellant:** "You will like it. I will make you moan like crazy."

**Sam:** "I'm sure you will."

**Appellant:** "I think I want your first cum in my mouth and I will swallow it. I want you to sit back and relax. I will suck you till you cum. Then we can take a rest a bit. Then I will suck you again. This I will lay down and you can face fuck me, then you can shoot your load on my face. That would be fun."

**Sam:** "It sounds like it, my first."

**Appellant:** "Try to find some excuse to sleep over. I promise I will suck you all night."

**Sam:** "I will have to lie and say I'm going over a friend's house, but I have to stay out all night."

**Appellant:** "Do it man, I want your all night."

**Sam:** "Can you bring me something to eat or to drink?"

**Appellant:** "Sure what do you want?"

**Sam:** "I like Monster, the green can, and maybe regular Doritios?

**Appellant:** "I got you man, I want to make sure you have enough food and drink because you need energy. I'm going to do you all night, lol."

**Sam:** "Funny. You mean with the Monster energy drink? But they are pretty good."

**Appellant:** "Lol. I know. I will bring cans for you . ☺" [7]

**Sam:** "good."

[N.T., 5/7/2014, p. 71-78].

---

[7] Lol stands for laugh out loud. [N.T., 5/7/2014, p. 78].

8

On Wednesday, November 6, 2014, Sergeant Smith and Appellant engaged in another conversation, during which Sergeant Smith and Appellant confirmed that they would still be meeting, physical descriptions of each other, and the food that Appellant was to supply. [N.T., 5/7/2014, p. 79-80]. That same day, later in the evening, the two engaged in a second conversation during which Appellant asked Sergeant if he was still able to meet on Friday, which Sergeant responded that he was. They decided on 7:00p.m., at IceWorks.  Appellant asked for a phone number; Sergeant Smith gave Appellant the undercover number of Detective Joe Walsh. [N.T., 5/7/2014, p. 85].

On Friday, November 8, 2014, the scheduled meeting date, Sergeant Smith and fellow detectives from Delaware County CID went to Aston IceWorks, 3100 Dutton Mill Road, Aston PA. Sergeant Smith and Detective Walsh parked across the street in the Industrial Center. Sergeant Smith texted Appellant and instructed him to walk down Dutton Mill Road and cross the street into the Industrial Park. [N.T., 5/7/2014, p. 93]. Sergeant Smith could see Appellant cross the street onto Turner Industrial Drive. At this point, Sergeant Smith and the other officers present arrested Appellant. Appellant was taken into custody. A black and green Monster can was located in his back pocket. [N.T., 5/7/2014, p. 97].

Appellant was transported to the Aston Township Police Department, where he waived his Miranda rights and Sergeant Smith conducted an interview.  [N.T., 5/7/2014, p. 117].

9

## PROCEDURAL HISTORY

As a result of the facts presented above, Appellant was arrested on November 8, 2014. On April 21, 2014, this Court selected a jury but did not swear the jury in. On April 23, 2014, counsel for Appellant filed a motion to suppress alleging that the taped confession given to police by Appellant should be suppressed because Appellant's Miranda waiver was not knowing, voluntary, or intelligent. On April 24, 2014, Counsel for both parties and this Court dismissed the jury until May 7, 2014 in order for this Court to hear testimony on the suppression and to make any necessary redactions to the taped statement.

On April 24, 2014, this Court held a hearing on Appellant's motion to suppress. Sergeant Gary Smith testified and this Court listened to the taped confession. On April 25, 2014, this Court denied Appellant's request and issued Findings of Fact and Conclusions of Law.

On May 7, 2014, a jury trial was held. Sergeant Gary Smith and Detective Joseph Walsh testified. The jury also listened to Appellant's taped confession, in which Appellant admits to sending and receiving those emails and that he knew Sam was fifteen years old. Appellant was found guilty of the following offenses: Count 1: Criminal Solicitation to Involuntary Deviate Sexual Intercourse with a Person Less than 16 Years of Age, Count 6: Criminal Attempt to Involuntary Deviate Sexual Intercourse with a Person Less Than 16 Years of Age, and Count 11:Criminal Use of A Communication Facility. The jury also found that the alleged victim "Sam" was under

10

the age of 16 at the time the offense occurred and that Appellant, age 45, was four or more years older than Sam at the time the offense occurred.

On August 14, 2014, this Court sentenced Appellant as follows: Count 1: 36-72 months in a state correctional facility; Count 6: 36-72 months in a state correctional facility concurrent to Count 1; Count 11: 12 month's state probation consecutive to Count 6. Appellant was not classified as a sexually violent predator. [N.T., 8/14/2014].

On August 22, 2014, counsel for Appellant filed a post-sentence motion to vacate the verdict for lack of sufficient evidence, to vacate the verdict because it was against the weight of the evidence, and a motion for a new trial. This Court held a hearing on September 17, 2014 and denied the motion on September 24, 2014.

On October 24, 2014, counsel for Appellant filed a notice of appeal. This Court issued a 1925(b) Order on November 12, 2014. On November 25, 2014, this Court granted Appellant an extension of time to file his 1925(b) statement. On December 17, 2014, Appellant filed his 1925(b) statement raising two issues for appeal: (1) that his sentence was illegal because he should not have been convicted of and sentenced on two inchoate crimes and (2) that this Court erred in denying his motion to suppress.

**APPELLANT SHOULD NOT HAVE BEEN SENTENCED ON CRIMINAL ATTEMPT TO COMMIT INVOLUNTARY DEVIATE SEXUAL INTERCOURSE AND CRIMINAL SOLITICATION TO COMMIT INVOLUNTARY DEVIATE SEXUAL INTERCOURSE PURSUANT TO 18 Pa.C.S.A. § 906.**

"A person may not be convicted of more than one of the following inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct

11

designed to commit or to culminate in the commission of the same crime." *18 Pa.C.S.A. § 906.* The term of conviction in relation to section 906 means "entry of a judgment of sentence not a finding of guilty by the jury. *Commonwealth v. Grekis,* 411 Pa. Super. 513, 533    (1992). Section 906 is only applicable where conduct constitutes preparation for a single criminal objective. *Grekis,* 411 Pa. Super. 533 citing *Commonwealth v. Zappacosta,* 265 Pa. Super. 71, 401 A.2d 805 (1979).

"A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission." *18 Pa.C.S.A. § 902.* A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. *18 Pa.C.S.A. § 901.*

Appellant argues, pursuant to 18 Pa.C.S.A. § 906, that it was illegal for the jury to convict him of both criminal solicitation and criminal attempt to involuntary deviate sexual intercourse. However, section 906 defines conviction as "a judgment of sentence not a finding of guilt by the jury," therefore; Appellant's argument is without merit.

Next, Appellant argues that it was illegal for this Court to sentence him on both the criminal solicitation and criminal attempt to commit involuntary deviate sexual intercourse. This Court agrees that 18 Pa.C.S.A. § 906 is applicable. Therefore, this Court respectfully quests that the judgment of sentence for Count 6: Criminal Attempt

12

to Commit Involuntary Deviate Sexual Intercourse with a Person Less than 16 Years of Age be vacated and the rest of Appellant's sentence be affirmed.

## THIS COURT PROPERLY DENIED APPELLANT'S MOTION TO SUPPRESS

When addressing a party's challenge to a trials court's ruling on a motion to suppress, the appellate court examines the suppression court's factual findings to determine if they are supported by the record and if its legal conclusions are drawn therefrom are correct. *Commonwealth v. Scarborough,* 89 A.3d 679 (Pa. Super. 2014).

This Court issued its Findings of Fact and Conclusions of Law in support of its denial of the motion on April 25, 2014. Attached, as "Exhibit A" is a copy of this Court's Findings of Fact and Conclusions of Law. For purposes of this issue, this Court adopts its reasoning set forth in "Exhibit A."

## CONCLUSION

For the aforementioned reasons, Appellant's sentence is illegal and Count 6 should be vacated and the rest of the sentence affirmed. In addition, this Court's denial of Appellant's motion to suppress was proper and should be affirmed.

BY THE COURT

JOHN P. CAPUZZI, SR.,        J.

13

# EXHIBIT A



Circulated 08/03/2015 11:53 AM

FILE COPY

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

**COMMONWEALTH OF PENNSYLVANIA** | CP-23-CR-357-2014

**V.**

**Chairil Saragih**

## ORDER

**AND NOW,** to wit, this 25th day of April, 2014, upon consideration of Defendant's Motion to Suppress Defendant's statement to police and after a hearing held on April 24, 2014, it is hereby **ORDERED** and **DECREED** that said motion is **DENIED.**

### I. Findings of Fact:

1. On April 24, 2014 a suppression hearing was held. Sgt. Gary Smith testified for the Commonwealth and defendant Chairil Saragih testified on his own behalf.

2. Defendant, being of Indonisian decent was provided with an interpreter.

3. Defendant contends that the audio recorded statement he provided was coerced as a result of police mistreatment and that his waiver of his Miranda rights was not knowing, voluntary and intelligent.

4. Defendant was arrested at approximately 6:10 p.m. on November 8, 2013 by the Aston Township Police Department in conjunction with the Criminal Investigation Division (CID) of the Delaware County Office of the District Attorney.

5. The primary arresting officers were Sgt. Gary Smith if the Aston Township Police Department and Detective Joseph Walsh of CID.

6. Sgt. Smith is also a member of the Delaware County Internet Crimes Against Children task force.

7. As a member of ICAC, Sgt. Smith is involved in investigating crimes against children.

8. On November 1, 2013, using a computer, Sgt. Smith responded by way of an e-mail to an ad placed on Craig's List by the defendant.

9. In the ad, defendant sought young college boys looking for a "blow job."

10. Sgt. Smith identified himself as "Sam," a fifteen (15) year old male.

11. During the ensuing week, "Sam" and the defendant communicated by e-mail.

12. It was agreed between the defendant and "Sam" that they would meet on November 8, 2013 at Ice Works in Aston Township.

13. At the meeting, defendant intended to perform oral sex on "Sam."

14. When defendant arrived at Ice Works, he was sent a text message directing him to cross the street and come into the Turner Industrial Park.

15. Defendant did as directed and was approximately 50 feet up the driveway when he surrounded by approximately six to eight police officers, some of whom were in uniform.

16. Defendant was taken down and handcuffed, placed in a patrol car and transported to the Aston police station.

17. There is no allegation that defendant was interrogated while in the police car, nor is there any assertion that defendant made any statement while in the police car.

18. At the Aston police station, defendant was initially placed on a bench for approximately 15 to 20 minutes, while Sgt. Smith retrieved his paperwork. One of defendant's hands was handcuffed to a ring on the wall.

19. Defendant was subsequently escorted to the interview room on the second floor of the police station.

20. Defendant was interviewed for about an hour and said interview was recorded.

21. Both Sgt. Smith and Detective Walsh conducted the interview.

22. Sgt. Smith testified that the defendant was read his Miranda warnings and signed the Miranda warning sheet before being interviewed. (CS-1).

23. Sgt. Smith stated that his volume and tone was normal and that defendant appeared normal and that defendant was not crying or sweating.

24. Sgt. Smith testified that defendant understood the question; was not threatened; no promises were made to him; there was no physical contact with the defendant; and defendant had no injuries.

25. At the end of the interview, defendant was asked if he was mistreated and that he said he felt he was, but Sgt. Smith thought this referred to the handcuffs being too tight.

26. Sgt. Smith believed that the defendant was not handcuffed during the interview, but defendant contended otherwise.

27. Defendant testified the handcuffs were too tight and left marks for two months.

28. As the audio recording was the lynchpin of defendant's motion, both the Assistant District Attorney and counsel for the defendant agreed that the court needed to listen to the audio recording.

29. The court did listen to the relevant part of the audio recording shortly after the conclusion of the hearing.

30. The audio recording demonstrated that defendant had absolutely no difficulty understanding or communicating in English with the officers.

## II. Conclusions of Law:

1. Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of their *Miranda* rights. *Com v. Kunkle*, 79 A.3d 1173 (Pa. Super. 2013).

2. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Kunkle*, 29 A.3d at 1180 citing *Miranda v. Arizona*, 86 S.Ct. 1602 (1996).

3. In order to avoid suppression based on a violation of *Miranda*, the Commonwealth must establish that warnings were given and that "the

accused manifested an understanding of those warnings." *Com v. Cohen*, 53 A.3d 882, 885 (Pa. Super. 2012).

4. In considering whether a defendant has validly waived his *Miranda* rights, the trial court engages in a two-pronged analysis: (1) whether the waiver was voluntary, in the sense that the defendant's choice was not the end result of governmental pressure; and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice. *Com v. Kunkle*, 79 A.3d 1173, 1180 (Pa. Super. 2013) citing *Com v. Pruitt*, 951 A.2d 307 (Pa. 2008).

5. When examining whether a statement was voluntary, the court looks to the totality of circumstances that surrounds the statement. *Com. v. Bryant*, 67 A.3d 716 (Pa. 2013).

6. To assess the totality of the circumstances surrounding the statement, several factors are examined: (1) the duration and means of interrogation; (2) whether the questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; (3) the length of the accused's detention prior to the confession; (4) whether the accused was advised of his or her constitutional rights; (5) the attitude exhibited by the police during the interrogation; (6) the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; (7) the conditions attendant to the detention including whether the accused was deprived of food, drink, sleep, or medical attention; (8) the age, education, and intelligence of the accused; (9) the experience of the accused with the law enforcement system and other factors which might serve to drain ones powers or resistance to suggestion and coercion. *Bryant*, 67 A.3d 716 (Pa. 2013).

7. The question of voluntariness isn't whether or not defendant would have confessed without interrogation, "but whether the interrogation was so manipulative or coercive that it depraved the defendant of his ability to make a free and unconstrained decision to confess. *Com v. Rushing*, 71 A.3d 939 (Pa. Super 2013).

8. Sgt. Smith testified that he read verbatim the *Miranda* Warnings to the defendant before he began any questioning. Sgt. Smith stated that the defendant appeared calm and collected and he was certain that the defendant understood his rights and the English language.

9. The audio from the interview substantiates Sgt. Smith's testimony. Both Sergeant Smith and Detective Walsh were speaking in calm tones and were not in any way threatening or coercing the defendant to speak with them. In addition, the defendant appears calm and willingly to interact. In the beginning, the defendant states that "he will stop talking if he wishes to consult an attorney."

10. The audio further evidences that the defendant had no trouble understanding or speaking English with Sgt. Smith or Detective Walsh.

11. Counsel claims that simply because the defendant was wearing handcuffs during the interview that he was essentially coerced into giving a statement. While the audio shows that the defendant was handcuffed, it also shows the Officer's making sure the defendant was comfortable; even loosening them when they were too tight.

## Conclusion

1. Based on the testimony provided by Sergeant Smith and this Court's review of the oral statement, the defendant's waiver of his Miranda rights was knowing, voluntary, and intelligent; therefore, the statement will not be suppressed.

The Defendant's Motion to Suppress is **DENIED**. Additional findings of fact and conclusions of law will be submitted in the Opinion of the Court at the appropriate time, should it be deemed necessary.

BY THE COURT:

_____
Judge John P. Capuzzi, Sr.

Cc: Ryan Grace, Assistant District Attorney
David Daniel, Assistant Public Defender