J-A23021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN COASTON, | : | |
| | : | |
| Appellant | : | No. 701 WDA 2014 |

Appeal from the Judgment of Sentence entered on April 3, 2014
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0014774-2012

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 14, 2015**

John Coaston ("Coaston") appeals from the judgment of sentence imposed following his convictions of murder of the second degree, robbery, and criminal conspiracy (robbery).  ***See*** 18 Pa.C.S.A. §§ 2502(b); 3701(a)(1); 903.  We affirm.

On October 1, 2008, in the Hill District section of Pittsburgh, Justin Fowler ("Fowler") was shot in the back.  The shooting severed Fowler's spinal cord below his shoulders, resulting in paralysis below the arms.  Leila House ("House") witnessed two black males wearing masks that only covered a portion of their faces shoot Fowler.  House stated that the assailants then went through Fowler's pockets and took his money.  House called the police and later identified Coaston in a photo array as one of the shooters.  Coaston was arrested with two other men, including Malik S.

Williams ("Williams"). Due to the fact that Fowler survived the shooting, Coaston was charged with aggravated assault. However, the charge was withdrawn on November 19, 2008, because Fowler was uncooperative[1] and House was afraid to testify.

On December 28, 2011, Detective Margaret Sherwood ("Detective Sherwood") responded to a call regarding a deceased person in an apartment. Detective Sherwood noticed a strong odor of a body decomposing and observed Fowler on the floor of the apartment. Detective Sherwood stated that Fowler's body had decomposed and that his muscles had atrophied from lack of use. Detective Sherwood also observed that Fowler had very large bed sores and that there were flies and maggots on his body. Allegheny County Forensic Pathologist Dr. Beiyang Xu ("Beiyang") stated that Fowler died as a result of complications of paralysis caused by a gunshot wound that severed his spine. Xu ruled the manner of death a homicide.

On December 11, 2012, Coaston was charged with criminal homicide, criminal conspiracy to commit homicide, robbery, and criminal conspiracy to commit robbery. Coaston's case was joined with that of Williams, who was facing similar charges. The case proceeded to a jury trial in April 2013. The jury found Coaston guilty of murder of the second degree, robbery, and criminal conspiracy to commit robbery. The jury acquitted Williams of all

---

[1] Fowler stated that he was going to "keep it in the streets," and he did not want to be labeled a "snitch." N.T., 4/25/13, at 196, 201.

charges. The trial court sentenced Coaston to forty to ninety-nine years in prison on the murder conviction, a consecutive prison term of ten to twenty years on the robbery conviction, and a consecutive prison term of ten to twenty years on the conspiracy conviction. Coaston filed a Motion for Reconsideration, arguing, *inter alia*, that the robbery and murder sentences should have merged. The trial court re-sentenced Coaston to forty to ninety-nine years in prison for the murder conviction and a consecutive prison term of ten to twenty years for the conspiracy conviction.

Coaston filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement. The trial court issued an Opinion.

On appeal, Coaston raises the following questions for our review:

1. Whether there was insufficient evidence to convict [Coaston] when the Commonwealth failed to prove beyond a reasonable doubt that the assault on [Fowler] was the direct and substantial cause of [Fowler's] death?

2. Whether the trial court abused its discretion in failing to sustain the objection to Exhibits 6-8 (photographs)?

3. Whether [Coaston] received an illegal sentence when he was sentenced for both second-degree murder and criminal conspiracy to commit robbery, when those sentences should have merged for purposes of sentencing?

Brief for Appellant at 6.

In his first claim, Coaston contends that the evidence was insufficient to support his murder conviction. *Id*. at 15. Coaston argues that the Commonwealth failed to demonstrate that Fowler's October 2008 gunshot

wound was the direct and substantial cause of his death. *Id*. at 15, 24. According to Coaston, the evidence suggested that Fowler's death was caused by his failure to take care of himself, including the fact that he was malnourished and allegedly abused alcohol. *Id*. at 20-24; *see also id*. at 24 (wherein Coaston claims that Fowler's physical and mental condition was not so weakened, due to the injuries, that he could not take care of himself).

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa. Super. 2015) (citation and brackets omitted).

The Crimes Code defines murder of the second degree as follows:

- 4 -

> **(b) Murder of the second degree.--**A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

18 Pa.C.S.A. § 2502(b).

"It is undisputed that the Commonwealth must prove a direct causal relationship between the acts of a defendant and the victim's death." ***Commonwealth v. Fabian***, 60 A.3d 146, 152 (Pa. Super. 2013) (citation omitted). "To establish criminal causation, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability." ***Commonwealth v. Nunn***, 947 A.2d 756, 760 (Pa. Super. 2008). In establishing criminal causation, the Commonwealth must fulfill a two-part test. ***See Commonwealth v. Rementer***, 598 A.2d 1300, 1305 (Pa. Super. 1991); ***see also*** 18 Pa.C.S.A. § 303(a). "First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred." ***Nunn***, 947 A.2d at 760; ***see also*** 18 Pa.C.S.A. § 303(a)(1). "A victim's death cannot be entirely attributable to other factors; rather, there must exist a causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place." ***Nunn***, 947 A.2d at 760 (citation and quotation marks omitted); ***see also Fabian***, 60 A.3d at 152 (stating that "so long as the defendant's [conduct] started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide

may properly be found.") (citation omitted). "The second part of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions." *Nunn*, 947 A.2d at 760. "[T]he results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible." *Id*.

The trial court summarized the relevant evidence as follows:

Detective [] Sherwood testified that she responded to the investigation of a deceased person on Chauncey Drive, Pittsburgh, Pennsylvania. She noticed a strong odor of a body decomposing and observed [Fowler] on the floor of the apartment. She described numerous, used and unused, bandages and a wheelchair in the living area. [Fowler's] body had large decubiti, bed sores, across his buttocks, hips, feet, shins and elbows. She knew the deceased suffered a gunshot to the back on October 6, 2008, and that his spinal cord was severed below the shoulders. … Several decubiti were identified on various parts of [Fowler's] body, and that they were caused by pressure on the skin that is in a position for a long time, which causes the skin to break down resulting in bed sores. Numerous gauze bandages, used and unused, were observed along with seeping bandages throughout the apartment. She observed [Fowler] to be very thin with atrophied muscles.

***

The Commonwealth called [] House, who testified that on October 1, 2008, she resided in the Bedford Housing Community, directly across from Chauncey Drive. While on the phone, and looking out her kitchen window, she saw a man on the steps in the courtyard. She observed two (2) black males run from a hallway to the top of a stairway. The two (2) men reached their hands out, [] House heard a pop and the man who was walking fell straight down. [Coaston] was observed going through [Fowler's] pockets taking his money, after which both shooters fled the area. [] House made an in-court identification of the defendants. A prior pre-trial photo array was admitted as Exhibit 18, wherein … Coaston, was identified by [] House as the "short one with gun" on his picture. [] House testified that she

was sure that [Coaston] was one of the individuals who were standing over the stairs shooting at [Fowler]. …

Detective Dale Canofari testified that he took measurements and photographed the scene of this shooting a couple weeks after the death of [] Fowler. Photographs were taken from [] House's kitchen window toward the area in which she had observed the shooting of [Fowler]. The distance from the kitchen window to the scene of the shooting measured 44 feet.

Detective Brian Weismantle testified that at the time of [] Fowler's shooting in 2008, he responded to the scene of the shooting. The detective testified that he identified the red shirt worn by [] Fowler. … He also verified that [] House identified [] Coaston in a photo array, where she wrote "short one with gun" and signed it.

Trial Court Opinion, 11/6/14, at 3-5 (citations and footnote omitted).

Additionally, Beiyang, a Forensic Pathologist with the Allegheny County Medical Examiner's Office, conducted an autopsy on Fowler's body. N.T., 4/24/13, at 85, 87. Beiyang testified that Fowler had an "oval-shaped scar on the right posterior shoulder [from] the remote gunshot entrance wound." *Id*. at 88. Beiyang stated that a projectile was left in the border of Fowler's chest wall. *Id*. at 94-95. Beiyang asserted that the shooting caused Fowler's spine to be severed between the T-1 and T-3 vertebra, which rendered Fowler paralyzed from the arms down. *Id*. at 92-94, 100. Beiyang testified that multiple locations on Fowler's body had deep decubitus ulcerations, commonly known as pressure sores or bed sores, which were a natural consequence of paralysis. *Id*. at 88-89, 102. Beiyang indicated that even though Fowler did not take care of himself, the ulcerations would have eventually developed because of his paralysis. *Id*. at 102, 104-05, 108.

Beiyang stated that Fowler only weighed 92 pounds at the time his body was found, and that the low weight may have been caused by loss of muscle mass, normal atrophy, and decomposition of the body. *Id*. at 103-05, 111. Beiyang testified that while the alcohol level in Fowler's body was consistent with decomposition, he could not tell what Fowler's blood alcohol level was at the time of his death. *Id*. at 109-13; *see also id*. at 113 (wherein Beiyang testified that no drugs were found in Fowler's body, but that drugs dissipate over time). Beiyang confirmed that the ulcerations, caused by gunshot wounds that led to paralysis, resulted in Fowler's death. *Id*. at 99-100. Beiyang determined the cause of death to be a homicide. *Id*. at 100, 107.

Based upon the foregoing evidence, viewed in a light most favorable to the Commonwealth, we conclude that Coaston's actions were the "but for" cause of Fowler's death. *See Commonwealth v. Thompson*, 660 A.2d 68, 70-71 (Pa. Super. 1995) (concluding that evidence was sufficient to support appellant's murder conviction where appellant assaulted a man, which caused subdural hematomas, leading to the victim's eventual death due to pneumonia); *Commonwealth v. Cartagena*, 416 A.2d 560, 562 (Pa. Super. 1979) (concluding that the evidence was sufficient to support the murder conviction where appellant stabbed the victim, which caused paralysis and eventually an infection from bed sores that killed the victim one and one-half years after the stabbing). Indeed, Coaston's argument

that Fowler did not take care of himself was not such an independent and intervening act as to break the chain of causation. *See Cartagena*, 416 A.2d at 563 (stating that the fact the victim did not cooperate in treating his bed sores was "not such an intervening and independent act sufficient to break the chain of causation or events between the stabbing and the death."). Because Fowler's death was a foreseeable and natural consequence of Coaston's actions, we conclude that the evidence was sufficient to support Coaston's murder conviction.

In his second claim, Coaston contends that the trial court abused its discretion in admitting photographs of Fowler's dead body. Brief for Appellant at 25. Coaston argues that while the photographs were redacted, they were so graphic that they unduly prejudiced him at trial. *Id*. at 25, 27-28, 31; *see also id*. at 28-29 (wherein Coaston states that the pictures depicted Fowler's body when the police found him, and Fowler's body on the medical examiner's table). Coaston claims that Beiyang was capable of explaining the cause and manner of death without the admission of photographs. *Id*. at 26, 31. Coaston asserts that he is entitled to a new trial without the admission of the photographs. *Id*. at 31.

Our standard of review regarding the admission of photographs of a homicide victim is as follows:

> We will affirm a trial court's admission of photographs absent an abuse of discretion. …

When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:

First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1033-34 (Pa. 2012) (citations omitted).

Here, the Commonwealth sought to introduce various photographs of the victim at the apartment and during the autopsy. N.T., 4/24/13, at 4-7. The trial court excluded many of the photographs because they were too graphic and inflammatory. *Id*. at 5, 9-10, 15-16. However, the trial court allowed the Commonwealth to introduce three photographs (Exhibits 6, 7, and 8) of Fowler to show the ulcerations on his body, which the Commonwealth argued were the cause of his death. *Id*. at 10, 21, 23-26; *see also id*. at 10, 11-12, 18-19 (wherein the Commonwealth argued that the photos were relevant to show Fowler's ulcerations were the cause of his death). Due to the graphic nature of the photographs, the Commonwealth was required to redact two of the photographs deemed admissible. *Id*. at 18-21.

Detective Sherwood testified that Exhibits 6 and 7 showed the condition of Fowler's body when it was found on December 28, 2011. *Id*. at

70. Specifically, Detective Sherwood stated that the photographs displayed the ulcerations on Fowler's body. *Id*. 73-75, 79-80. Beiyang testified that Exhibit 8 was an autopsy photograph that depicted various ulcerations on Fowler's body. *Id*. at 91-92. Beiyang stated that the ulcerations were the cause of Fowler's death. *Id*. at 99-100.

The trial court gave the following instruction with regard to the photographs:

> You saw some exhibits. Your recollection will control, and I don't need to look it up, but there were several photos of [Fowler]. I believe 6, 7, and 8 may have been the numbers, but at any rate, you saw some photographs that were admitted into evidence for the purpose of showing the nature of the wounds, that [Fowler] had and showing conditions of the scene of the alleged crime which may help you understand the testimony of witnesses who testified about these events.
>
> It is not pleasant – and they were not pleasant photographs to look at. You should not let those photographs stir your emotions to the prejudice of the defendants in this case.
>
> Your verdict must be based on a rational and fair consideration of all of the evidence and not on passion or prejudice against the defendants, the Commonwealth, or anyone else connected with this case.
>
> Again, they were only designed and offered for the purpose of helping explain what the situation was at the time, even though they were – I don't know the proper word; unpleasant is putting it mildly I would say.

N.T., 4/26/13, at 107-08.

Here, despite the gruesome nature of the photographs, they were probative in that they assisted the jury in understanding the circumstances and cause of Fowler's death. *See Commonwealth v. Rush*, 646 A.2d 557,

560 (Pa. 1994) (stating that "the condition of the victim's body provides evidence of the assailant's intent, and, even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs."). Indeed, the trial court carefully considered each photograph offered, and only admitted certain photographs to aid the jury's understanding of Fowler's death in light of Coaston's defense. With regard to the prejudicial impact that Coaston may have sustained, the trial court provided a cautionary instruction designed to ameliorate bias in the minds of the jury and remind them of their duty to serve in an impartial manner. *See* N.T., 4/26/13, at 107-08; *see also Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. 2014) (stating that it is presumed that the jury will follow a trial court's instructions). In light of the probative value of each photograph, and the trial court's cautionary instruction, we conclude that the trial court did not abuse its discretion in admitting the photographs.[2] *See Commonwealth v. Pestinikas*, 617 A.2d 1339, 1347 (Pa. Super. 1992) (concluding that trial court did not abuse its discretion in admitting photographs of the deceased victim, even though the photographs were assumed to be inflammatory, because the trial court issued a cautionary instruction warning the jury that they should not let the photographs "stir up [their] emotions."); *see also Commonwealth v. Spell*, 28 A.3d 1274, 1281 (Pa. 2011) (noting that an appropriate

---

[2] After review, the cases cited by Coaston do not support his claim for relief.

instruction regarding photographs of a homicide victim can minimize the danger of inflaming the jury).

In his final claim, Coaston contends that the trial court imposed an illegal sentence because his sentences for murder and conspiracy should have merged. Brief for Appellant at 32, 38, 41. Coaston points out that the jury was instructed that he could be found guilty of murder under a theory of accomplice liability, and the jury made no finding as to the theory under which Coaston was convicted. *Id*. at 32-33, 37-38, 40-41. Coaston argues that the definition of conspiracy is similar to accomplice liability, and therefore the sentences should have been merged. *Id*. at 32, 38.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence." ***Commonwealth v. Quintua***, 56 A.3d 399, 400 (Pa. Super. 2012). "Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Id***.

Whether offenses merge at sentencing implicates Section 9765 of the Sentencing Code, which provides the following:

**§ 9765. Merger of sentences**

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

- 13 -

Here, the jury convicted Coaston of murder of the second degree and criminal conspiracy to commit robbery. Pointedly, these crimes are distinct criminal acts and the statutory elements of murder of the second degree are plainly different from the elements of criminal conspiracy to commit robbery. *See Commonwealth v. Szakal*, 50 A.3d 210, 214 n.5 (Pa. Super. 2012) (noting that "the crime of criminal conspiracy to commit robbery did not merge with the crime of second degree murder for sentencing purposes."); *see also Quintua*, 56 A.3d at 401 (stating that "there is no merger if each offense requires proof of an element the other does not."). Thus, the trial court properly determined that the sentences should not merge.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015